IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Quinn Butler, Christopher Skillin, and Jason Barth, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> American Cable & Telephone, LLC and C. Perry Moore, <br><br> Defendants. | ) ) ) ) ) Case No. 09-CV-5336 ) ) Hon. Mag. Michael T. Mason ) ) ) ) ) ) |

**PUTATIVE CLASS MEMBERS' RESPONSE IN OPPOSITION
TO THE PARTIES' MOTION TO CERTIFY A SETTLEMENT CLASS
AND FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

On July 6, pursuant to the Court's Order on Potential Objectors' motion to compel (Doc. 86), Plaintiffs' counsel Adam Betzen, who seeks appointment as counsel for the proposed settlement class, provided Potential Objectors with the declaration attached to this Response as Exhibit A. In his declaration, Mr. Betzen admits:

- On April 20, nine days before the Court-mediated settlement conference, ACT's lawyer, Steven Pearlman, told him that Plaintiff Quinn Butler could not, in the context of this case, represent a class of workers who had been misclassified as independent contractors **and offered to provide him with the names of workers who had worked for ACT as contractors**, (¶3);

- On April 26, three days before the settlement conference, Mr. Pearlman's associate, Colin Connor, provided Mr. Betzen "the names and phone numbers for approximately seven individuals who worked for ... ACT as independent contractors," including Jason Barth. In Mr. Betzen's own words, **"[t]he purpose of the conversation was to allow Plaintiffs' counsel to contact individuals** ... in light of Defendants' contention and **in anticipation of the Court supervised settlement conference scheduled for April 29, 2010**, (¶4.)[1]

---

[1]The June 29 Order required Plaintiffs' counsel to "provide written verification ... stating that there are no written documents between plaintiffs' counsel and defense counsel related to the addition of

1

Two days later, the parties stipulated to the addition of Jason Barth as a Plaintiff. (Doc. 43, 45.) The very next day, they agreed to settle the valuable overtime claims of an entire class of workers who had no representation from the day the case was filed until the day before settlement. (Doc. 45, 49.) Additionally, under the proposed settlement, Mr. Barth, who did not become a plaintiff until April 28 and provided no service to the class before then, receives a $5,000 bounty payment. (Doc. 56-1 ("settlement") ¶56.)

These facts, and others described below, reek of collusion and conflict of interest, and they preclude the finding of adequacy of representation that is a prerequisite to certification of the proposed settlement class pursuant to Fed. R. Civ. P. 23(a) and (b) and the appointment of class counsel pursuant to Fed. R. Civ. P. 23(g). For these and other reasons, the Court should deny the motion for certification of the settlement class, and it should also deny preliminary approval of the proposed settlement because the parties have fallen far short of establishing that its terms fall within the range of an adequate proposal. *See In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) ("*In re GM Engine*"); *Kakani v. Jain*, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007) (denying preliminary approval to proposed settlement in a misclassification case with all of the same defects as the settlement here); *Liebman v. J.W. Petersen Coal & Oil Co.*, 73 F.R.D. 531 (N.D. Ill. 1973); *see also See* Manual for Complex Litigation, Fourth, §21.633 (Federal Judicial Center 2004) ("Manual").

---

Plaintiff Barth," (Doc. 86 at 2), but the declaration does not contain the verification, (s*ee* Ex. A.) Also, the Order required Plaintiffs' counsel to set forth "a summary of any conversations between themselves and defense counsel regarding the addition of plaintiff Barth," however, the statements in Mr. Betzen's declaration are deficient as "a summary" of the conversations because they fail to describe anything that **Mr. Betzen** said during the conversations, describing only what defense counsel said. He also fails to identify who initiated the conversations and does not verify that these were the only ones. (*See id.*)

In Part I of this Response, Potential Objectors set forth the applicable law. In Part II, we show that certification of the proposed subclasses should be denied. In Part III, we show that the proposed settlement, including the proposed full reversion of unclaimed funds to the Defendants, is grossly inadequate and unfair and contains numerous objectionable terms, including the purported release of Fair Labor Standards Act claims of individuals who have not joined the lawsuit, in violation of 29 U.S.C. §216(b). In Part IV, we renew our request to present evidence at a preliminary approval hearing, in the event that the Court does not reject the settlement outright, and also point out that the proposed notice is unintelligible.

### I. The Law Applicable to the Certification of Settlement Classes and to the Preliminary Approval of Class Action Settlements

**A. Proposed settlement classes must satisfy each of the criteria of Fed. R. Civ. P. 23(a) and (b) and are subject to heightened scrutiny**

It is hornbook law that proposed settlement classes must meet the requirements of Rule 23 (a) and (b) and are subjected to heightened judicial scrutiny in order to ensure the due process rights of absentee class members in a context where collusion and conflicts of interest are rampant. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Tr.*, 834 F.2d 677, 682 (7th Cir. 1987); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3rd Cir. 1995) ("*In re GM Pick-Up Truck*"). In *Amchem*, the Supreme Court emphasized that "the Rule 23(a) and (b) class-qualifying criteria ... are not impractical impediments–checks shorn of utility–in the settlement class context ... [but rather] serve to inhibit appraisals of the chancellor's foot kind–class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness." 521 U.S. at 621. Even before *Amchem*, the Seventh Circuit has consistently subjected

settlement classes to exacting review to ensure that the interests of absent class members are not being trampled. *See Mars Steel,* 834 F.2d at 682 ("inquiry must ... be especially careful and penetrating"); *see also, In re GM Pick-Up Truck*, 55 F.3d at 805; Manual §§21.132, 21.612.

**B. Prior to granting preliminary approval and authorizing notice, a district court should make a reasoned decision, based on the record, that the terms of the proposed settlement fall within the "range of possible approval." Settlements with objectionable terms and inadequate consideration should be rejected at the preliminary stage**

Before approving notice to the class, the Court must review the settlement and make a determination that it is "fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) (reversing settlement that extinguished claims being prosecuted by absent class members); *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) (same); Manual §21.632. At the preliminary approval stage, the Court determines whether the proposed terms are "within the range of possible approval." *In re GM Engine*, 594 F.2d at 1124. In addition to determining "whether the settlement is a reasonable approximation" of the value of class members' claims, *Mirfasihi*, 356 F.3d at 786, the Court should also carefully scrutinize the proposal for objectionable terms, such as overly broad releases, unwarranted incentive payments, and disproportionate attorney's fees. *See Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007).

**II. The Parties Have Failed to Establish that Each Proposed Subclass Satisfies the Criteria of Rule 23(a) and (b) and that Plaintiffs' Counsel Merit Appointment Pursuant to Rule 23(g). Consequently, Class Certification Should Be Denied**

The parties treat class certification as a rubber stamp, assigning it barely more than a page of their brief and failing even to articulate the criteria of Rule 23(a), (b) and (g). (*See* Doc. 56 at 5-6.) As shown below, the standards of Rule 23 have not been met.

**Independent Contractor Subclass**

**A.    The independent contractor subclass has been afforded inadequate representation**

1.  It is an inescapable fact that the proposed independent contractor subclass was afforded no representation during the litigation of this case. From June 2009, when this case was filed in the Circuit Court of Cook County as a state law class action, until March 2010, Quinn Butler was the only plaintiff and putative class representative. (*See* Doc. 1-1.) However, Mr. Butler cannot (and did not) represent the independent contractor subclass because he did not work for ACT as a cable installer until February 2009, after ACT started treating installers as employees rather than contractors. (*See* ACT Answer (Doc. 9) ¶8.)  Unlike the nine Potential Objectors who are members of the proposed contractor subclass, Mr. Butler did not suffer one dollar of lost overtime compensation from the Defendants' misclassification scheme. Since Mr. Butler was himself never a misclassified ACT cable installer, he lacks standing to pursue any claim arising from the Defendants' misclassification of its cable workers as independent contractors, and he cannot represent the interests of workers, including nine Potential Objectors, who *were* misclassified and whose rights under the FLSA and Illinois overtime statute *were* violated as a result. *See Arreoa v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("To have standing to sue as a class representative, the plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members"); Fed. R. Civ. P. 23(a)(3-4) (claims of the representative parties must be typical of the claims of the class, and the representative party must fairly and adequately protect the interests of the class); *Oshana v. Coca-Cola*, 472 F.3d 506, 514 (7th Cir. 2006) ("a claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the

same legal theory" (quotation marks and citation omitted)).

2. These facts, and their legal ramifications, cannot reasonably be disputed. ACT has admitted the facts in its answers to the complaint and amended complaint, (*see* Doc. 9, ¶8; Doc 41, ¶9), and in discovery responses served in *Bonilla v. Comcast*,[2] (*see* Doc. 65, Group Ex. A). ACT's pay data also confirm these facts. (*See* Doc. 65, Declaration of Marni Willenson ¶3; Data.)[3] Mr. Butler's name appears in ACT's contractor data for only one week in late December 2008. And that week, he was not employed as an installer. Rather, he did twenty hours of training (called "rideout," because the trainee rides along with a technician) for which he was paid by the hour, incurred no overtime, and suffered no wage deductions. (*Id.*) Mr. Butler cannot represent misclassified workers who suffered substantial overtime violations and unlawful wage deductions based upon his twenty hours of service as an hourly-paid trainee. *See Arreoa*, 546 F.3d at 795. Moreover, ACT's lawyers appear to agree, since they told Mr. Betzen that his client could not adequately represent the independent contractors in this case. (*See*, *infra*, at 1; Ex. A.)

3. In March 2010, after *Bonilla* was filed, Christopher Skillin was added as a plaintiff in this case. (*See* Doc. 40). However, Skillin did not represent the interests of members of the proposed contractor subclass, because like Butler, he was not hired by ACT as a cable technician until 2009. (*See* Doc. 65, Group Ex. A (Response to Request to Admit No. 2); Willenson Declaration ¶3; Data.) Skillin, moreover, was always paid as an employee. (*Id.*)

4. As described previously, it was not until April 28 that the Plaintiffs amended the

---

[2]Case No. 10-CV-1127 (N.D. Ill. Manning, J.)

[3]The pay data ("Data"), filtered by counsel to show pay information for Quinn Butler, Christopher Skillin and Jason Barth, will be submitted to the Court on CD-ROM and to the parties via electronic mail.

complaint by stipulation to add Jason Barth. According to ACT's pay records, Mr. Barth worked for ACT as a cable technician classified as an independent contractor from late October to late December 2008. (*See* Data.) Under the Settlement, Mr. Barth–who served as a putative class representative for two days and performed no other service to the class–would receive an inflated incentive award of $5,000.

Also, Potential Objectors have been informed and believe that, after the settlement conference, Mark Joanis, ACT's manager and one of its investors, paid off Mr. Barth's car loan to reward his cooperation. (*See* attached Declaration of Marni Willenson.) This "side agreement" was not disclosed by the parties pursuant to Fed. R. Civ. P. 23(e).

5. The above facts preclude a finding of adequacy of representation as to the independent contractor subclass. The parties cannot evade the Rule 23 requirements of typicality and adequacy by agreeing to add a plaintiff with standing on the eve of settlement. The prerequisites of Rule 23 serve a purpose of constitutional dimension: to afford due process to absent class members. Indeed, this case exemplifies why class representatives can only pursue claims for injuries that they themselves have suffered. Here, since Quinn Butler did not work as a misclassified ACT cable technician, he did not have the information needed to effectively evaluate, prosecute, or compromise the valuable overtime claims of the Potential Objectors and dozens (or hundreds) of other workers who were paid by ACT as contractors. *Compare* Doc. 1-1 ¶11 (bare allegation of misclassification), *with Bonilla* Doc. 1 ¶¶2, 13-21 (pleading detailed facts). Specifically, Butler has no personal knowledge of the extensive hours worked by Potential Objectors and other absent class members as contractors, of the extraordinary actual and *de facto* deductions taken from their wages (*e.g.* 13.8% pay deductions for worker's compensation

7

coverage), or of any other aspects of their employment as contractors. Moreover, since he had no personal stake in the prosecution of these claims, it is of little surprise that he did not vigorously prosecute them and has agreed to their compromise for little more than nuisance value.

**B. The record reflects collusion between the parties in the addition of Jason Barth**

Settlements which are the product of collusion should not be approved. *See Mirfasihi*, 450 F.3d at 748; *Reynolds*, 288 F.3d at 279. Here, the parties cooperated in an effort to, in their own words, "eviscerate" the claims of the independent contractors that are being aggressively pursued in *Bonilla.* (Doc. 54 at 6.) The upshot of Mr. Betzen's declaration is that ACT's lawyers provided Plaintiffs' counsel with a list of potential plaintiffs who might be added to the case so that the lawyers could settle the claims being vigorously prosecuted in *Bonilla* without the participation of the *Bonilla* plaintiffs. Not surprisingly, the end result of this behavior is a settlement that sells out the claims of the misclassified workers.[4] (*See*, *infra,* Part III.)

**C. Plaintiffs failed to vigorously prosecute the case**

Beyond the implications of how the case was settled, there is no evidence of any adversarial proceedings at any stage of this "litigation." Specifically, the record does not reflect that the

---

[4]The settlement also has the hallmarks of a form of "reverse auction," whereby defendants facing more than one lawsuit settle with the attorneys who will settle for the least. *See Reynolds*, 288 F.3d at 282; Manual §22.924. In the RAND Institute's *Class Action Dilemmas* report, the authors aptly describe a form of collusion in cases involving "small individual losses." *Class Action Dilemmas*, RAND Institute for Civil Justice (1999), at 79-80. The authors compare the litigation and settlement strategies of a firm with a high-volume of such cases with those of a firm pursuing a single case "to its maximum advantage," noting: "The defendant in a class action suit, facing a plaintiff class action attorney who is pursuing an inventory-oriented litigation strategy, might expect to pay less than it would to resolve a similar class lawsuit brought by a plaintiff firm pursuing a single-lawsuit-at-a-time investment strategy. If the defendant and the plaintiff attorney [at the high-volume firm] can reach an agreement to settle the case early, they both can save significant amounts of money–for example, by not undertaking full discovery and not engaging in time-consuming pretrial motion practice. As a result, significant wrongdoing on the part of the defendant ... may never come to light." *Id.* at 80.

8

Plaintiffs took a single deposition, conducted any discovery, or hired their own expert to examine the work orders relied on by the Defendants for their own (self-serving) analysis of class members' work hours. Worse, Plaintiffs failed to secure from Comcast extensive data (the "TechNet" data) that can be used to substantiate the class members' testimony about their work hours. (*See also*, Ex. C.) Put simply, the Plaintiffs did not invest the time and resources necessary to effectively prosecute the case and to represent the class. (*See also*, *infra*, Part III.)

**D. The predominance requirement of Rule 23(b)(3) is not met**

Nine misclassified workers have already joined *Bonilla*, even with a stay of discovery entered and in the absence of formal notice. Therefore, contrary to a finding of predominance under Rule 23(b)(3), individual class members do have an interest in individually controlling the prosecution of their own actions. In fact, they have begun litigation concerning the controversy against both ACT and Comcast and did so months **before** any independent contractor plaintiff joined this case. (*See Bonilla* Doc. 1.)

## Employee Subclass

Though not marred by the same glaring conflicts of interest, the showing under Rule 23 for the employee subclass is inadequate. First, the parties offer no information from which the Court can conclude that the claims of Butler and Skillin are typical of those of the employee subclass. In fact, Butler was employed for only nine weeks, (*see* Doc. 65, Willenson Declaration ¶3; Data), and was then fired, according to Defendants, because he was a poor worker. (*See* Doc. 28-1, Requests to Admit 19, 21.)

Second, before designating Skillin as a class representative, the Court should query him about his $5,000 incentive payment. It is disproportionate to any service that Skillin performed to the

class between March 4 and April 29 and suggests a conflict of interest.

## Appointment of Class Counsel

When a class is certified, counsel must be appointed. *See* Fed. R. Civ. P. 23(g). However, the Plaintiffs have failed to submit even a modicum of information to support findings on the Rule 23(g) factors, which include counsel's experience, and aptly, "the work counsel has done in identifying or investigating potential claims in the action," and "the resources that counsel will commit to representing the class." In response to the Court's, June 29 Order, they did produce law firm "profiles" for Betzen Law Office and Stephan Zouras, (Ex. C), but these do not substitute for proper declarations of counsel. Among other things, they do not identify cases on which either Mr. Betzen or attorney Ryan Stephan has been appointed lead counsel in a class action without the simultaneous appointment of a senior partner or more experienced co-counsel.

Also, Potential Objectors have noted that the Stephan Zouras law firm profile states that "Mr. Stephan and Mr. Zouras have been admitted to the Trial Bar of the United States District Court for the Northern District of Illinois," (Ex. C), and Mr. Stephan's appearance likewise represents that he is a member of the Court's Trial Bar, (Doc. 8). However, the Court's public records do not reflect that Mr. Stephan is a member of the Trial Bar, and an agent of the Court has confirmed that he is not. (*See* Ex. D.)

Finally, several members of the putative independent contractor subclass either met with Mr. Betzen personally or spoke with him about the case earlier this year but were unimpressed and declined to agree to his representation. (*See* Ex. E, F.) Although the Court is not required to defer to the opinion of putative class members, it should recognize that their concerns have been borne out by the failure of Plaintiffs' counsel to vigorously prosecute this case to the benefit of the

class.

### III. The Parties Have Failed to Establish that the Terms of the Proposed Settlement are Within the Range of Possible Approval, So Preliminary Approval Should Be Denied

As a bargain for putative class members, the proposed settlement is downright awful. The total funds being made available to the two subclassess – on a claims-made basis, with a full reversion of unclaimed funds – is less than $150,000 ($250,000 minus 30% for attorney's fees, $20,000 in incentive payments, and (estimated $5,000) costs of administration). Settlement ¶59. This proposal is not "within the range" of adequate outcomes and preliminary approval should accordingly be denied. *See Liebman,* 73 F.R.D. at 531; *Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007) (rejecting similarly deficient proposed settlement in a misclassification case); *Domonoske v. Bank of America*, 2010 U.S. Dist. LEXIS 7242 (W.D. Va. Jan. 27, 2010) (recommending denial of certification), *adopted in part*, 2010 U.S. Dist. LEXIS (W.D. Va. Apr. 15, 2010) (denying both class certification and preliminary approval).

**1. The value of the settlement is grossly inadequate measured against the value of the absent class members' claims.** "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re GM Engine*, 594 F.2d at 1132 (*citing* Manual for Complex Litigation [Fourth] § 1.46 at 56). "Conceptually, this requires a comparison of the amount offered with the product of (1) the probability of plaintiff's prevailing on the merits times (2) the present value of probable damages plaintiff would recover if he did prevail." *Id.*; *see Mirfasihi*, 356 F.3d at 786; *Reynolds*, 288 F.3d at 284-85.

2. Here, a finding that the Defendants' financial offer to absent class members is within the

range of adequate outcomes is precluded by:

- *First*, the total failure of the parties to place before the Court any evidence; calculations; prior briefing; or meaningful exposition of the issues, claims and defenses, from which the Court might conclude that the payments being offered under the settlement fairly reflect the value of the absent class members' claims that are being released; and

- *Second*, the manifest deficiency of the proposed payments based on Potential Objectors' own calculations.

    **2.   The parties' total failure to establish the fairness of the value of the settlement.** As in *Kakani*, "[n]o evidence whatsoever was submitted with the [preliminary approval] motion to explain the extent of possible recoveries." 2007 U.S. Dist. LEXIS 47515 at *18. Instead, the settlement has been submitted for this Court's review with numbers that may as well have been plucked from thin air. The Plaintiffs offered no statement or calculation of what they view as the maximum recovery in the case and no analysis of the strength of the individual claims or any defenses. This non-showing cannot satisfy the standards of preliminary approval, especially in this Circuit, where a quantitative assessment of the adequacy of the offer is demanded. *See*, *e.g.*, *Reynolds*, 288 F.3d at 284-85 (district court should "quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate").

    **3.   The manifest deficiency of the proposed payments.** This case is worth far more than the settlement reflects. It involves hundreds of putative class members, (*see* Doc. 56-2), and is being settled, in the words of putative class member Richard Ellis, not for peanuts, but not even the peanut **shells**. Preliminary damages calculations in *Bonilla* reflect that a misclassified ACT cable worker lost on average more than $200 *each week* in unpaid overtime wages and unlawful expense deductions. (*See* Ex. B, Willenson Declaration.) Factoring in liquidated damages, a reasonable estimate of the Defendants' exposure on the claim of *each* misclassified worker is

$20,000 for each year employed during the limitations period. Moreover, this is a conservative estimate that disregards all deductions other than those taken for worker's compensation insurance, which were clearly illegal, and it does not include reimbursement for the workers' substantial out-of-pocket costs. (*Id.*) Thus, a settlement of $72,000, which is approximately the value of what is being offered to the entire independent contractor class, is not even nominal.

4. **The reversion of unclaimed funds and disproportionate attorney's fees.** Contrary to language used in the agreement, this is not a common fund settlement. It is a claims-made settlement with a full reversion of unclaimed funds to the Defendants. Settlement ¶59. Claims-made settlements are disfavored and suspect, as the defendants secure a release of the legal claims of non-claiming class members and pay nothing for it. *See Mirfasihi*, 356 F.3d at 785; *In re GM Pick-Up Truck*, 55 F.3d at 800-01. Likewise, awarding attorney's fees based on the total "value" of a non-existent "fund" is disproportionate. Instead, fees should be awarded based either on a lodestar calculation, since this is a fee-shifting case, or on a percentage of the funds actually claimed. *See* Manual §21.61 (identifying as a "recurring potential abuse": "calculating the fee based on the allocated settlement funds, rather than the funds actually claimed by and distributed to class members"); NACA Guidelines (2006), 255 F.R.D. 215 (2009) (Guideline 8(C)(4), "[t]he amount of the 'fund' on which a percentage award is calculated should exclude any amount which may revert or has already reverted back to the defendants as undistributed funds"); *see, generally, Synthroid Marketing*, 264 F.3d 712 (7th Cir 2001).

5. **The attempt to release Fair Labor Standards Act claims of non-parties.** The settlement purports to release the FLSA claims of absent class members; however, FLSA claims cannot be released unless a worker affirmatively chooses to relinquish them in the context of a

13

*bona fide* dispute under the FLSA. *See* 29 U.S.C. §216(b); *Kakani,* 2007 U.S. Dist. LEXIS 47515 at *19; *Wright v. Linkus Enterprises*, 2009 U.S. Dist. LEXIS 50881 (E.D. Cal. June 17, 2009); *see also Ameritech Benefit Plan Committee v. Communication Workers of America*, 220 F.3d 814 (7th Cir. 2000) (in Equal Pay Act case, "[t]here is no such thing as a Rule 23 class action" under the FLSA). As the *Kakani* court forcefully remarked, "Under no circumstances can counsel collude to take away FLSA rights including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit..[It] is unconscionable to try to take away the FLSA rights of *all* workers, whether or not they choose to join in affirmatively."[5]

    **5. Lack of discovery.** In evaluating fairness, the Court must consider "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Here, Plaintiffs' discovery efforts were negligible, and the lack of information is reflected in the low value and prejudicial terms of the settlement. For example, Plaintiffs did not secure the easily accessible TechNet data that can be used to substantiate their work hours and counter Defendants' low-ball estimates. Also, Plaintiffs did not explore the exposure of ACT as successor to Patriot Communications but released claims for the first two years of the limitations period (from June 2006-February 2008) for a value of **zero**. *Cf. Mirfasihi*, 450 F.3d at 747 (criticizing failure to "canvass all potential

---

    [5]Far from providing support, review of the actual settlement documents in cases cited by the parties to justify the FLSA release, (*see* Motion at 5), instead demonstrate its impropriety. For example, the settlement in the *Whirlpool* case did **not** purport to release the FLSA claims of non-claiming class members. Rather, the FLSA release language was placed on the back of the settlement checks and was effective only against those class members who negotiated their checks. (*See* Ex. F.) Also, unlike this case which, contrary to repeated misrepresentations to this Court, was never pursued as §216(b) collective action, the *Whirlpool* case was certified as a collective action and more than 800 FLSA plaintiffs joined. (*See* Ex. G.)

avenues of recovery" before determining that certain claims were "worthless").

**6. Other serious problems.** Other provisions of the settlement reflect a lack of adequate attention to the consequences of the proposal on putative class members, or a willingness to unfairly compromise their interests, including: (a) the inflated incentive payments; (b) the tax treatment of the settlement, which allocates 100% of the claims to unpaid wages, (¶63), the least favorable tax treatment, and also provides that claimants will receive 1099 forms reflecting their "pro rata" share of attorney's fees, (¶55) which, depending on the number of claims and the value of any individual's share, might leave an individual claimant with an **after-tax loss**; and (c) the highly prejudicial--indeed outlandish--covenant not to sue, (¶86); *cf. Kakani,* 2007 U.S. Dist. LEXIS 47515 at *17.

### IV. In the Event the Court Does Not Deny Approval Outright:
### A. Potential Objectors Renew Their Request to Participate in the Preliminary Approval Hearing; and B. the Court Should Reject the Notice Form as Unintelligible

Though not strictly required, the Seventh Circuit has indicated that it is advisable to hold "a brief evidentiary hearing" before giving preliminary approval and issuing notice. *Mars Steel*, 834 F.2d at 684. Further, the Manual for Complex Litigation, at §21.633, recognizes that "[i]n settlement classes ... it is often prudent to hear not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who represent individual class members but did not participate in the settlement negotiations." Hence, in the event that the Court is not persuaded to reject the settlement, Potential Objectors renew their request to participate in the preliminary approval hearing and to present evidence showing why the class should not be certified or the settlement approved. Lastly, we note to the Court that the proposed notice is truly unintelligible for a lay person, and that it should be modeled in the widely accepted call-and-response form

15

reflected in the Federal Judicial Center's illustrative notices.[6]

Dated: July 9, 2010                    Respectfully submitted,

/s/ Marni Willenson
Willenson Law, LLC
542 S. Dearborn St., Ste. 610
Chicago, IL 60605
312-546-4910 Phone
312-261-9977 Fax

Bar No. 6238365
marni@willensonlaw.com

Attorney for Putative Class Members

---

[6] *See, e.g.*, http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/376 (employment discrimination class notice)

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused true and correct copies of the foregoing Putative Class Members' Response in Opposition to the Parties' Motion to Certify a Settlement Class and for Preliminary Approval of the Proposed Settlement and supporting exhibits to be served upon the following through the Electronic Case Filing system:

> Steven J. Pearlman
> Seyfarth Shaw LLC
> 131 S. Dearborn St., Suite 2400
> Chicago, IL 60603
> spearlman@seyfarth.com
>
> Betzen Law Office, LLC
> Adam J. Betzen
> 2863 W. Leland Ave., Suite 1
> Chicago, IL 60625
>
> Stephan Zouras, LLP
> Ryan F. Stephan
> 205 N. Michigan Ave., Suite 2560
> Chicago, IL 60601

this 9th day of July, 2010.

                                                                 /s/ Marni Willenson