IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Quinn Butler, Christopher Skillin, )<br>and Jason Barth, on behalf of )<br>themselves and all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>American Cable & Telephone, LLC and )<br>C. Perry Moore, )<br>)<br>Defendants. ) | Case No. 09 C 5336<br><br>Hon. Mag. Michael T. Mason |

**Putative Class Members' Motion for Leave to File a Sur-Reply in Opposition to
Certification of the Settlement Class and to Preliminary Approval**

Putative Class Members (identified in Doc. No. 69) respectfully seek leave to file a sur-reply in opposition to the parties' motion for certification of the settlement class and for preliminary approval of the proposed class action settlement. On August 16, 2010, the parties filed separate 15-page reply briefs each with supporting declarations, (Doc. Nos. 93, 93-1, 93-2, 94, 94-1), and Defendants also filed a 13-page declaration of their proposed expert, Robert Crandall, plus 20 pages of exhibits to his declaration, (Doc. 93-3), which they refer to together as an "expert report." (Doc. 94 at 2 ,7, 9.) Thus, in total, the parties have responded to Putative Class Members' opposition brief with 43 pages of argument and opinion testimony plus dozens of pages of exhibits, including Mr. Crandall's analysis of what is purported to be class wide data.

Now, for the Court to be fully informed on issues relevant to its determination of whether the two proposed settlement subclasses should be certified and whether the terms of the settlement are within the range of reasonableness and thus merit preliminary approval, Putative

Class Members request leave to file a sur-reply in opposition. The sur-reply, if allowed, along with an anticipated motion to strike[1] will address Defendants' expert report produced with their reply brief; identify uncontested issues of material fact that preclude certification of a least one of the proposed settlement subclasses; and respond to allegations that have been lodged repeatedly and without proof that Putative Class Members and their counsel have appeared in this matter for some illicit purpose and not to lodge legitimate objections to certification of the settlement classes and to the terms of a patently unfair proposed class action settlement.

### A. The Preliminary Approval Proceedings

1. On June 2, 2010, the parties jointly filed a motion for certification of the settlement class and for approval of the proposed class action settlement and class notice. (Doc 56.) On June 7, the Court entered an Order granting Putative Class Members leave to appear at the presentment of the motion, (Doc. 62), and then granted them leave to file a motion to compel and an opportunity to file an opposition brief, (Doc. 63).

2. On June 29, the Court granted in part Putative Class Members' motion to compel, ordering Plaintiffs' counsel to provide "a written verification setting forth a summary of any conversations between themselves and defense counsel related to the addition of plaintiff [Jason] Barth," and certain other information relevant to the issue of adequacy of representation. (Doc.

---

[1] Defendants' expert report was filed without disclosure of the information required by Fed. R. Civ. P. 26(a)(2) and contains extensive opinion testimony, *e.g.* on litigation risks, that the deponent is incompetent to provide. Pursuant to Local Rule 37.2, Putative Class Members appeared to reach agreement with the Defendants for the production of the data and other information relied upon by Mr. Crandall to prepare his declaration and the attached exhibits, however, it now appears that the *Plaintiffs* will object to the Defendants' voluntary production of the information. (*See* Ex. A, Declaration of Marni Willenson, ¶¶4-5.) The informal resolution of this dispute, if any, will determine the scope of Putative Class Members' motion to strike.

86.) On July 6, Plaintiffs produced the declaration of their attorney Adam Betzen which, while hardly forthright and not a "summary" of his conversations with defense counsel, revealed enough to discern that the parties had colluded on the eve of settlement to add a plaintiff so that claims which were not properly in the case could be compromised and released. (*See* Doc. 89-1.)

3.   After reviewing the information disclosed, Putative Class Members filed their opposition brief on July 9, 2010. (Doc. 88.)

4.   Under the Court's scheduling order entered on June 29, the parties' reply brief was due on July 26. (Doc. 87) ("*[t]he parties' reply* shall be filed by 7/26/10") (emphasis supplied).) On July 13, the Defendants contacted Putative Class Members to secure their agreement to an extension of time to reply, stating that they needed time to secure a report from their expert. (*See* Ex. A at ¶2.) Putative Class Members agreed, (*id.*), and the Defendants filed an unopposed motion to extend time to respond. (Doc. 90.) The Court granted Defendants' unopposed motion, permitting them a total of six weeks, through August 16, to file a reply. (Doc. 92) ("Defendants' unopposed motion ... is granted. The reply brief is due 8/16/10.")

5.   By contrast, Plaintiffs did not contact Putative Class Members' counsel to request an extension of time to file a separate reply, (*see* Ex. A at ¶3), and did not file any motion to extend the reply deadline. Thus, to the extent that the Court contemplated separate reply briefs (something for which permission was never sought), Plaintiffs' brief was due on July 26, 2010.

6.   On August 16, Defendants filed their 15-page reply brief, (Doc. 93), plus the Crandall declaration and exhibits, (Doc. 93-3), and witness declarations (Doc. Nos. 93-1, 93-2).

7.   On the same day, and without leave of Court, Plaintiffs filed their own 15-page reply brief, (Doc. 94), and witness declaration, (Doc. 94-1).

8.      In total, the parties filed 43 pages of argument and opinion testimony, plus 20 pages of exhibits to the expert report including purported statistical analyses, and several witness declarations. This volume of material has muddied the issues before the Court, distracting its attention from facts that are fatal to both class certification and preliminary approval. Putative Class Members request an opportunity to sur-reply to clear away the muck.

### A Preview of Arguments to Be Made by Putative Class Members, If They Are Afforded an Opportunity to File a Sur-Reply

**A.  Class Certification**

1.  The declarations submitted by the parties do nothing to undermine, and to the contrary confirm, material facts which, along with the obvious inferences arising from those facts, Putative Class Members can only assume were not brought to the Court's attention during the parties' purported "arms-length" negotiation:

   a.  The only two plaintiffs in the case until the day before settlement could not, consistent with Article III of the Constitution, represent the independent contractor subclass because they are not class members. Thus, the claims of the independent contractors were not properly asserted in this case, because there was no plaintiff with Article III standing to assert them until the case settled. Contrary to the parties' suggestions, this is not a game of "gotcha" pursued by plaintiffs who filed their own claims "late." Rather, Fed. R. Civ. P. 23 and the Article III standing requirement ensure due process for absent class members who, as this case shows, cannot be adequately represented by a non-class member who knows nothing about their claims, cannot effectively shepherd their prosecution, and who

has no reason to zealously litigate them because he has nothing at stake.

b. Out of concern that a settlement would draw an objection, Defendants' attorneys communicated with Plaintiffs' attorneys just prior to the settlement conference, told Plaintiffs' counsel that Quinn Butler could not represent workers on the misclassification claims, and provided Plaintiffs' counsel with a list of the names and telephone numbers of seven workers who could. Defendants offered up Jason Barth's name and telephone number to Plaintiffs' counsel on April 26, *which according to the evidence submitted by the parties was less than two weeks after Defendants "purchased" Barth's truck "for the outstanding loan amount" so that he could avoid repossession.* (*See* Doc. 94-1 at ¶7; Doc. 93-2 at ¶¶ 3-4.)

c. At the suggestion of defense counsel, Plaintiffs' counsel contacted Barth, (Doc. 94), who agreed to be a class representative. On April 28, the complaint was amended by agreement to add him as a plaintiff.

d. On April 29, the parties settled the claims of the proposed independent contractor subclass with the agreement of Mr. Barth, who receives a $5,000 bounty payment for his one day of service to the class. And under the terms of the proposed settlement, absent class members foot the bill for this bounty payment which is deducted from the amount payable to absent class members before their claims are calculated.

2. These uncontested facts should cause the Court, without presentation of any further argument, to deny the motion for certification of the independent contractor settlement subclass.

3. There is also insufficient evidence before the Court to conclude that Plaintiffs'

counsel have devoted the necessary time or resources to the litigation of the claims of either the employee subclass or the independent contractor subclass to adjudge the representation adequate.

### B.  Whether the Settlement Terms Are Within the Range of Reasonableness

1.  The Defendants' "expert report" prepared to rebut Putative Class Members' estimate of the value of their own claims does not establish that the consideration being paid under the settlement is within the range of reasonableness. First and foremost, the Court cannot make a determination that the settlement is within the range of reasonableness without *Plaintiffs' own evaluation of the Defendants' exposure*, and Plaintiffs have offered ***nothing***. The statement that damages are "amorphous," (Doc. 94 at 13), does not excuse Plaintiffs from their burden of establishing that the deal they negotiated for absent class members is a fair one.

2.  Second, and likewise, the Crandall declaration does not establish the settlement value of the case even from a low-ball defense position. Although Defendants claim that his report "confirms that the size of the settlement fund is eminently reasonable," (Doc. 93 at 7), the report does no such thing. While Crandall offers his opinion that Putative Class Members' estimate of damages is too high, he does *not* offer his opinion or estimate of Defendants' exposure. Thus, and again, there is ***nothing*** here from which the Court could conclude that the settlement is within the range of reasonableness.

3.  Third, Mr. Crandall, who has an MBA, not a law degree, is incompetent to offer opinion testimony about litigation risks. (*But see,* Doc. 93-3, ¶¶4, 16-20 (lecturing Putative Class Members' counsel about how to discount damages to account for litigation risks).) Crandall's lack of competence on questions of law is reflected, for example, in his insistence that variations in individual class members' damages "should translate into a significant discount related to

class certification." (*Id.* ¶18.) This statement is contrary to hornbook law that the fairness of a class action settlement is determined by "compari[ng] the amount offered with the product of (1) the probability of plaintiff's prevailing *on the merits* times (2) the present value of probable damages plaintiff would recover if he did prevail." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979) (emphasis supplied). Class certification is not a merits issue. Further, Crandall's non-expert legal opinion is contrary to hornbook law that variations in individual damages will not defeat a motion for class certification pursuant to Fed. R. Civ. P. Rule 23(b)(3). *See* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1781 (2d ed. 1986) ("It uniformly has been held that differences among the members [of a class] as to the amount of damages incurred does not mean that a class action would be inappropriate" (collecting cases).)

4.  Fourth, Crandall's testimony that relies upon the class wide data and other information not disclosed pursuant to Fed. R. Civ. P. 26(a)(2) must be stricken. Together, nearly all of his declaration, and all of the attached charts, reflect either opinions formed in reliance upon information and data that have not been disclosed or opinions that he is incompetent to offer. Thus, nearly all of Mr. Crandall's testimony is admissible and must be disregarded.

5.  Also, the parties have either ignored or failed effectively to respond to Putative Class Members' identification of numerous, unfair and prejudicial settlement terms such as the purported release of Fair Labor Standards Act claims; the covenant not to sue; and the unfair tax treatment of class members' damages awards and provision of 1099 forms to claiming class members for their "pro rata" share of attorneys' fees which could result in claiming class members suffering an after-tax loss.

## Motions that May Be Filed and Time Needed to Respond

1.   Plaintiffs have not taken a "definitive position," (Ex. A. at ¶5), about the extent to which they will permit Defendants to disclose the information that Crandall relied upon in generating his opinions and statistical analyses. Yet, Putative Class Members cannot formulate or file a motion to compel and motion to strike until they know what information Plaintiffs will permit the Defendants to disclose.

2.   Further, Putative Class Members cannot prepare a complete response on the substance and file their sur-reply until after they receive and have had an opportunity to review the information that is disclosed either voluntarily or pursuant to an order of the Court.

3.   After Putative Class Members have the information at their disposal, they will need to respond to 30 pages of legal argument and 13 pages of proffered expert opinion testimony, and to assess whether it is necessary to offer any expert testimony or data analysis in response. At a bare minimum, the 11 Putative Class Members will need to meet together with counsel in order to systematically parse the claims made by Crandall about their hours worked and deductions.

4.   Putative Class Members' counsel is faced with a number of deadlines, including pending statutes of limitation, in other matters. She has a family vacation scheduled for the last week of August before her children return to school, and she will also be observing the Jewish religious holidays on September 9, 10 and 18.

5.   Thus, Putative Class Members respectfully request until September 22 to file their sur-reply in opposition to certification of the settlement class and preliminary approval. The request for this period of time is made in good faith and not for purposes of delay.

Dated: August 20, 2010               Respectfully submitted,

/s/ Marni Willenson
Willenson Law, LLC
542 S. Dearborn St., Ste. 610
Chicago, IL 60605
312-546-4910 Phone
312-261-9977 Fax

Bar No. 6238365
marni@willensonlaw.com

Attorney for Putative Class Members

9

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused true and correct copies of the

foregoing Putative Class Members' Motion for Leave to File a Sur-Reply in Opposition to

Certification of the Settlement Class and to Preliminary Approval to be served upon the

following through the Electronic Case Filing system:

Steven J. Pearlman
Seyfarth Shaw LLC
131 S. Dearborn St., Suite 2400
Chicago, IL 60603
spearlman@seyfarth.com

Betzen Law Office, LLC
Adam J. Betzen
2863 W. Leland Ave., Suite 1
Chicago, IL 60625

Stephan Zouras, LLP
Ryan F. Stephan
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601

this 20th day of August, 2010.

 /s/ Marni Willenson
Attorney for Putative Class Members