**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **QUINN BUTLER, Individually, and on Behalf of All Others Similarly Situated, CHRISTOPHER SKILLIN, Individually and on Behalf of All Others Similarly Situated, JASON BARTH, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) ) ) ) ) ) ) | |
| | ) | **09 CV 5336** |
| | ) | |
| | ) | **Magistrate Judge Michael T. Mason** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMERICAN CABLE & TELEPHONE, LLC and C. PERRY MOORE,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Michael T. Mason, United States Magistrate Judge:

Before the Court is the parties' Agreed Motion for Preliminary Approval of Settlement, Certification of Rule 23 Settlement Class, and Notice of Proposed Settlement to Class Members ([56], re-filed at [125]) (the "Agreed Motion"). A group of putative class members (collectively, the "Objectors") oppose the Agreed Motion. The Objectors have also filed a Motion to Strike [100], in which they ask the Court to strike the declaration of Robert Crandall, submitted in support of the Agreed Motion. Both motions have been extensively briefed. A preliminary fairness hearing was held on April 12, 2011, after which we granted the parties and the Objectors leave to file post-hearing briefs [132, 133]. For the reasons set forth below, the parties' Agreed Motion is denied without prejudice and the Objectors' Motion to Strike is denied.

I.    **Background**

A.    **The Pleadings**

On June 24, 2009, Quinn Butler, on behalf of himself and all others similarly situated, filed a putative class action complaint in the Circuit Court of Cook County against American Cable & Telephone, LLC ("ACT") and its manager C. Perry Moore (collectively, "Defendants").  Defendants subsequently removed this matter to the Northern District of Illinois.  As explained in more detail below, the complaint was amended on two occasions to add named plaintiffs Christopher Skillin and Jason Barth (collectively with Butler, "Plaintiffs").

The allegations of the operative pleading, the Second Amended Complaint [46], are as follows.  ACT is in the business of installing, servicing and disconnecting cable television services throughout Illinois.  (Sec. Am. Compl. ¶ 7.)  Plaintiff Butler worked for ACT as a cable technician.  (*Id.* ¶¶ 1, 8.)  Barth worked and continues to work for ACT as a cable technician.  (*Id.* ¶¶ 3, 8.)  Skillin worked and continues to work for ACT as a cable disconnect technician.  (¶¶ 2, 8.)

Plaintiffs allege that prior to January 2009, Defendants improperly classified the cable technicians as independent contractors and paid them on a contingent basis depending on the amount of jobs completed each week and without regard to overtime hours worked.  (Sec. Am. Compl. ¶ 16.)  During this time, Defendants purportedly deducted and withheld 13.8 percent of each technician's wages to compensate for the cost of workers' compensation insurance.  (*Id.*)

Beginning in or around January 2009, ACT allegedly re-classified Plaintiffs and

all similarly situated cable technicians as non-exempt employees under Illinois wage and hour laws and paid the technicians at an hourly rate.  (Sec. Am. Compl. ¶ 10.)  The hourly rate varied and was contingent on the number of jobs each technician completed on a weekly basis.  (*Id.*)  Defendants did not compensate technicians for "no access" jobs.  (*Id.* ¶ 11.)  No access jobs occurred when a technician attempted to service a location, but was unable to complete the assignment because, through no fault of his own, he was unable to access the necessary equipment.  (*Id.*)  According to the allegations of the complaint, Plaintiffs' job duties did not change when they were re-classified as employees and Defendants purportedly maintained supervisory authority over the technicians at all times.  (*Id.*)

According to Plaintiffs, Defendants permitted Plaintiffs to regularly work in excess of 40 hours per week without overtime compensation and directed the technicians to record less time than they actually worked.  (Sec. Am. Compl. ¶¶ 18, 20.)  Defendants purportedly deducted one hour from each day worked for a meal break, even though Defendants were aware that the technicians were not usually relieved from work for one hour meal breaks.  (*Id.* ¶ 18.)  Defendants also required the technicians to perform a variety of "off-the-clock" tasks, including mapping out directions for their service calls, preparing and cleaning tools and equipment, and completing paperwork.  (*Id.* ¶ 21.)  Defendants allegedly failed to accurately record the actual hours worked by the technicians.  (*Id.* ¶ 22.)

Plaintiffs have also alleged that Defendants made a number of improper deductions from their wages and failed to reimburse them for certain employment-related charges.  Specifically, Defendants allegedly deducted monies from the Plaintiffs'

wages for "Nextel Charges," "Vehicle Use," "Vehicle Deposit," "IL Install Non Labor Chargeback," "Meter Purchase," and "Uniform Cleaning." (Sec. Am. Compl. ¶ 12.) Plaintiffs further allege that Defendants did not reimburse technicians for fuel or toll charges for company vehicles. (*Id.* ¶ 13.) Defendants purportedly charged Plaintiffs "tool charges" and did not reimburse them for the cost of tools required to perform their job duties. (*Id.* ¶ 14.) Plaintiffs also allege that Defendants deducted charge-back penalties from wages for work that was completed but not properly documented. (*Id.* ¶ 15.)

Plaintiffs' eight-count complaint includes class claims, as well as an individual claim brought by Butler. Plaintiffs purport to bring their claims against Defendants on behalf of themselves and the following class:

> All individuals who were employed by the one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois as cable technicians or other positions performing similar responsibilities for the Defendants at any time during the relevant statute of limitations.

(Sec. Am. Compl. ¶ 26.) On behalf of the class, Plaintiffs allege violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* Plaintiffs also allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201/1, *et seq.* Additionally, Plaintiffs' complaint includes common law class claims for unjust enrichment, *quantum meruit* and breach of implied contract. Plaintiffs seek compensatory damages, including all overtime pay owed plus 2% interest, liquidated damages, and costs and attorneys' fees.

In his individual claim, Butler alleges retaliatory discharge, alleging that ACT

improperly terminated his employment after he filed a workers' compensation claim for injuries sustained on the job. Butler seeks compensatory and punitive damages, as well as costs and attorneys' fees.

In response to the complaint, Defendants denied all allegations of wrongdoing, disagreed that this matter could be maintained as a class action, and asserted a number of affirmative defenses. (*See* Defs.' Answers & Affirm. Defenses to Am. Compl. [41, 42].)

### B.    The Related *Bonilla* Action

On February 19, 2010, Eric Bonilla ("Bonilla") and Ramiro Perez ("Perez") filed a FLSA collective action against Comcast Corporation and ACT. The case was assigned to District Judge Blanche M. Manning. *See Bonilla v. Comcast Corp.*, No. 10 CV 1127 (N.D. Ill.). The *Bonilla* plaintiffs also sought to represent a class of cable technicians who were improperly classified as independent contractors and denied benefits such as overtime pay, workers' compensation coverage and guaranteed minimum wage. The *Bonilla* plaintiffs also allege that they were required to either drive their own vehicles without reimbursement for mileage, depreciation, fuel or insurance, or to pay ACT hundreds of dollars a month for the use of a vehicle. Further, the *Bonilla* plaintiffs were purportedly charged for, or required to provide, their own uniforms, equipment, Nextel service and digital cameras. As in this matter, the *Bonilla* plaintiffs allege violations of the IWPCA, the IMWL and the FLSA. The violations purportedly continued after the technicians were re-classified as employees.

Defendants Comcast and ACT moved to dismiss the *Bonilla* action on the

grounds that it was entirely duplicative of this earlier filed action. Alternatively, the *Bonilla* defendants asked Judge Manning to stay further proceedings pending a disposition in this matter. On January 7, 2011, Judge Manning denied the motion to dismiss, but granted a stay pending this Court's ruling on the pending Agreed Motion.

**C.    Discovery**

The parties proceeded with discovery in this matter, which was ordered closed on August 30, 2010 [17]. According to Plaintiffs, substantial discovery was conducted. In February 2010, ACT produced over 21,000 pages of documents, including electronic payroll data, work orders, and job performance related documents. (*See* Tr. of Prelim. App. Hr'g at 21-23; Agreed Mot. at 15; Pls.' Reply in Support of Agreed Mot. [94] at 10; Defs' Reply in Support of Agreed Mot. [93] at Ex. 1 - Decl. of Steven J. Pearlman.) Plaintiffs' counsel purportedly spent "close to a hundred hours" reviewing the documents and also interviewed approximately ten putative class members regarding their experiences at ACT and their possible claims. (Tr. of Prelim. App. Hr'g at 23-24.)

The docket also reveals that Defendants filed a motion to compel Plaintiffs to respond to discovery requests [27]. Plaintiff Butler filed a motion to quash a subpoena issued to Skillin [31], who at the time was a non-named party. The District Court granted the parties leave to withdraw their discovery motions when the matter was referred to this Court for a settlement conference [33]. It is undisputed that no depositions were taken.

**D.    Amendments to the Complaint**

On February 26, 2010, Plaintiff Butler sought leave to amend his complaint to

add Skillin as an additional named plaintiff and putative class representative. (*See* Pl.'s Mot. For Leave to File an Am. Compl. Instanter [36].) Judge Bucklo granted Butler's motion to amend on March 4, 2010 [39]. On April 28, 2010, Plaintiffs Butler and Skillin sought, and were granted, leave to add Barth as an additional named plaintiff and putative class representative. (*See* Pl.'s Mot for Leave to File an Am. Comp. Instanter [43] and 4/28/11 Minute Order [45].) Both motions indicated that the amended complaints did not add any additional counts or legal theories for relief.

### E.    Settlement Negotiations

The parties in this matter participated in a settlement conference before this Court on April 29, 2010. Present at that conference were the three named Plaintiffs, Butler, Skillin and Barth, Mark Joanis and C. Perry Moore on behalf of ACT, and defendants' expert Robert Crandall. With the assistance of this Court, the parties reached a settlement agreement, the provisions of which are set forth below. Thereafter, the parties consented to the jurisdiction of this Court [47] and filed the pending Agreed Motion for Preliminary Approval of Settlement, Certification of Rule 23 Settlement Class, and Notice of Proposed Settlement to Class Members.

### F.    Terms of the Proposed Settlement Agreement

Attached to the Agreed Motion is the parties' proposed settlement agreement (the "Agreement") [125-1]. Pursuant to the Agreement, Defendants agree to create a fund of $250,000 to settle Plaintiffs' claims in their entirety (the "Common Fund"), with all unclaimed amounts reverting back to Defendants. The Common Fund includes the following payments by Defendants: (1) payments to members of the Settlement Class;

(2) attorneys' fees to class counsel totaling up to thirty percent of the Common Fund; (3) Enhancement Payments of $10,000 to Butler, $5,000 to Skillin and $5,000 to Barth for their services as class representatives; and (4) Settlement Administrator's fees.

The Agreement defines the Settlement Class as "the Class Representatives and all persons who were employed by Defendants as hourly or piece-rate paid (*i.e.*, all non-exempt) installation and disconnect technicians working as either independent contractors or employees for ACT in Illinois [from February 28, 2008 through April 29, 2010]." (Agreement ¶ 41.) According to the Agreement, the Settlement Class includes the Independent Contractor Sub-Class (defined as "putative class members who claim they were misclassified during the relevant time period as independent contractors") and the Employee Sub-Class (defined as "putative class members who claim they worked as employees during the relevant period"). (*Id.* ¶ 41, 22, 29.)

Payments will be made only to those class members who submit a timely and proper claim form pursuant to the procedures set forth in the Agreement. The Common Fund will be allocated between the Independent Contractor Sub-Class and the Employee Sub-Class pursuant to a formula provided in paragraph 59. The parties have agreed that 100 percent of the amount distributed to each claimant will be considered damages for lost wages and will be reported as such on IRS Form W-2. (Agreement ¶ 63.)

Under the Agreement, all members of the class will release and discharge Defendants and all past, present and future parents, subsidiaries, affiliates, predecessors, successors, etc. from any and all claims, liabilities causes of action, etc., whether known or unknown, that were alleged or that reasonably could have arisen out

of the same facts alleged in this matter. (Agreement ¶ 82.) This includes, but is not limited to, violations of the IWPCA, the IMWL and the FLSA for improper expense deductions, failure to pay final compensation, and failure to provide compensation for all hours worked and for overtime. (*Id.*)

The parties have also submitted the proposed class notice, claim form and instructions to be distributed to the class members. The claim form will apprise each class member of the approximate amount he or she will potentially receive based on ACT's records and the formula set forth above. (Agreement ¶¶ 73, 78.)

## G. The Objectors

As the parties anticipated, on June 3, 2010, counsel for the *Bonilla* plaintiffs filed a motion seeking leave to appear at the presentment of the Agreed Motion [60]. The Court allowed counsel for the *Bonilla* plaintiffs to appear at the hearing, at which time the Court set a briefing schedule on the parties' Agreed Motion.[1] Following a number of extensions, requests to file sur-replies and other various disputes, the parties fully briefed the Agreed Motion and the accompanying Motion to Strike.

The Court set a preliminarily approval hearing for April 12, 2011. At that hearing, the Court questioned the attorneys for the parties and the Objectors, and allowed brief testimony from ACT's president, Mark Joanis, Plaintiff Jason Barth and defendants'

---

[1] Although there was some confusion, counsel for the *Bonilla* plaintiffs, Marni Willenson, initially appeared in this matter on behalf of putative class members Richard Ellis, Mark Sotira, Agirios Tsironis, Gregory Klemundt, Theodoros Koskinas, George Callahan, Andrew Cabin, Ramiro Perez, Eric Bonilla, Santiago Guzman and Anthony Jackson (*See* Objectors' Resp. and Corrected Resp. [80,81] to Plaintiffs' Mot. to Clarify [76].) On February 9, 2011, we granted Willenson's Motion for Leave to Withdraw Appearance on Behalf of Putative Class Member Eric Bonilla [115], as Bonilla no longer wished to proceed with the objections to preliminary approval. The Court also ordered that Bonilla's declarations, relied upon by the Objectors, be withdrawn. (App. to Objectors' Resp. at Ex. E [89-6] and App. to Objectors' Mot. to Strike and Sur-Reply at Ex. E [103-5].)

expert Robert Crandall.

## II. Analysis

### A. Class Certification

In the Agreed Motion, the Parties ask the Court to certify the following class for settlement purposes only:

> All individuals who were employed by the one or more of the Defendants, its subsidiaries or affiliated companies in the state of Illinois as cable technicians or other positions performing similar responsibilities for the Defendants at any time during the class period of February 28, 2008 through April 29, 2010.

(Agreed Mot. at 5.)

### 1. Standard for Class Certification

Federal Rule of Civil Procedure 23 gives the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (*quoting Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001). To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a) - numerosity, commonality, typicality and adequacy of representation - and one subsection of Rule 23(b). *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). In addition to those requirements, courts must determine whether the putative class meets two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977); *Cleary v. Philip Morris USA, Inc.*, 265 F.R.D. 289, 291 (N.D. Ill. 2010). Failure to meet any of the Rule 23 requirements

precludes class certification. *Arreola*, 546 F. 3d at 794.

Despite the broad discretion afforded the court, in the context of certifying a class for settlement purposes, the court "may not abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.'" *Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Indeed, the requirements of Rule 23 may prove more important for settlement classes where, as the Seventh Circuit put it, "the district court must act almost as a fiduciary of the class...." *Id.* But, when "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

### 2.    Discussion

Our concern with the parties' request for class certification is simple; the parties have failed to make clear which classes they seek to certify. In the Agreed Motion, the parties only request certification of the class set forth above. However, the Settlement Agreement explicitly defines the "Settlement Class" as including two sub-classes: the Independent Contractor Sub-Class and the Employee Sub-Class. (*See* Agreement ¶ 41.) Again, those sub-classes are defined in the Agreement as follows:

> Independent Contractor Sub-Class refers to putative class members who claim they were misclassified during the relevant time period as independent contractors.

> Employee Sub-Class refers to putative class members who claim they worked as employees during the relevant period

(*Id.* ¶¶ 22, 29.)  The Common Fund will be divided between the Independent Contractor Sub-Class and the Employee Sub-Classes under a formula agreed upon by the parties.

Interestingly, and despite the straightforward language of the Settlement Agreement, the parties have not requested certification of the sub-classes.  On the other hand, the parties do not refute the Objectors' repeated assertions that the parties seek certification of two separate sub-classes, and spend a fair share of time discussing those sub-classes in their own briefs.  Unfortunately, this uncertainty precludes us from fully analyzing the parties' request for class certification as we are concerned that the relief sought is in conflict with the language of the proposed Settlement Agreement.

Even if we assumed that the parties were seeking certification of the sub-classes, on the record before us, those sub-classes would not pass muster under Rule 23. Under that Rule, each sub-class is treated as a separate class and must satisfy the requirements for class certification.  Fed. R. Civ. P. 23(c)(5).  Here, the definitions of the sub-classes refer only to "the relevant time period."  That phrase is not otherwise defined in the Agreement, leaving the definitions imprecise.  While we could assume that the time period refers to the period set forth in the broader class definition, we decline to make such an assumption.  We also note that, as written, qualification for inclusion in each sub-class depends on the subjective "claim" of the putative class member.[2]  It is also difficult to determine which named Plaintiff purports to represent

---

[2] We do note that despite this subjective language, under the proposed Agreement, each claim form will identify the dates during which the claimant worked, as evidenced by ACT's records, and the claimant's anticipated share.  (Agreement ¶ 73.)  This objective method would likely cure the subjective definition of the sub-class.  But, again, the inconsistencies before us require further clarification before we can determine whether class certification is proper.

which sub-class.  We recognize the parties' contention that the three named Plaintiffs are proper representatives for the broader class.  But, certification of each sub-class would require an independent determination that any representative Plaintiff is a member of the sub-class, has claims typical of the sub-class, and could adequately represent the sub-class.

Lastly, we agree that if the parties were seeking certification of each sub-class, they have failed to provide the Court with the proper information to determine whether certification of those sub-classes is proper.  For example, while the parties have submitted a list of all known putative class members, which totals approximately 400 individuals, they have failed to make a "good faith estimate" as to the number of class members in each sub-class.  *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662 (N.D. Ill. 1996) (noting that plaintiffs are not required to specify the exact number of class members as long as they have made a good faith estimate).

For these reasons, the parties' request for class certification is denied without prejudice.  Any future request for class certification must clarify whether the parties do in fact seek certification of an Independent Contractor Sub-Class and an Employee Sub-Class.  Should the parties seek certification of such sub-classes, they must provide the Court with the information necessary to determine whether those sub-classes satisfy the requirements of Rule 23.

### D.    Preliminary Approval

The parties' Agreement is undoubtedly contingent upon their request for class certification, which we have denied.  (*See* Agreement ¶ 45.)  However, in the interest of preserving the time and resources of the parties and the Court, we will address our

concerns with the parties' proposed Agreement as it stands before us.  The parties are advised to take these concerns into consideration should they choose to engage in continued settlement negotiations.

### 1.    Standard for Preliminary Approval

Federal courts naturally favor the settlement of class action litigation.  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir.1996).  But, Rule 23 "requires court approval of any settlement that effects the dismissal of a class action."  *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002) (*quoting Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  Before approving such a settlement, the district court must determine that the settlement proposal is fair, adequate, and reasonable, and not a product of collusion.  *Id.*  Approval of a proposed class action settlement requires the following two-step process:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval.  This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.  If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing.  Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998).  In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel;

14

and (5) the stage of the proceedings and the amount of discovery completed. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Although the "fair, reasonable, and adequate standard" and the factors used to measure it are ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase. *Id.* (*quoting Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 C 5944 & 07 C 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov.14, 2007)

### 2. Discussion

As an initial matter, we disagree that the Agreement presented to the Court was the product of collusion as the Objectors so steadfastly contend. The Objectors' assertion that ACT paid off Barth's car loan in exchange for his cooperation in this litigation is both unsupported and contrary to the declarations and testimony presented to the Court on that issue. (*See* Pls.' Reply in Support of Agreed Mot. at Ex. 1 - Aff. of Pl. Jason Barth; Tr. of Prelim. App. Hr'g at 50.) We also disagree that ACT's submission of a sampling of individuals who worked as independent contractors supports a finding of collusion that would preclude approval, especially where, as here, the parties participated in arm's length negotiations with the assistance of the Court. *See McKinnie v. JP Morgan Chase Bank*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (noting that arm's length negotiations facilitated by a neutral mediator is one factor, among others, that supports a finding that the settlement is fair).

Further, we disagree that the amount of discovery conducted - which according to the Objectors was minimal - would preclude a finding that the Agreement was in the range of possible approval. As explained above, Plaintiffs' counsel conducted

interviews with a number of putative class members and the parties exchanged tens of thousands of documents, which were extensively reviewed by Plaintiffs' counsel. Courts have preliminarily approved settlement agreements with less discovery than was conducted here. *See, e.g., Kaufman v. American Express*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (court found settlement to be within possible range of approval where no discovery was conducted prior to reaching the settlement agreement and the agreement did not change following the close of discovery); *AT&T Mobility*, 270 F.R.D. at 350 ("Because counsel have conducted a significant amount of informal discovery and 'dedicated a significant amount of time and resources to advancing the underlying lawsuits'... this factor does not weigh against preliminary approval."). On the record before us, the Objectors' argument regarding the amount of discovery conducted is not well taken.

The Objectors' contention that the parties have failed to submit enough information for the Court to determine whether the Agreement is within the possible range of approval is also misplaced. We agree that, prior to final approval, the parties would be required to submit additional information, which would further assist us in comparing the strength of the Plaintiffs' case to the amount offered under the settlement. *See Synfuel Technologies, Inc. v. DHL Express, Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) (noting that this is the most important factor relevant to the fairness of a class action settlement). However, we disagree that the record is so devoid of information that we would be unable to make that comparison at this preliminary stage. *See Kaufman*, 264 F.R.D. at 448 (indicating that the proper valuation of the plaintiffs' claims would be the subject of any fairness hearing to be held later). In any event, due

to our finding that the Agreement, at least in its current state, presents a number of potential obstacles to approval, at this time, we decline to determine whether the $250,000 settlement fund is within the range of possible approval.

Our concerns with the Agreement are threefold. First, the high range of incentive awards is not supported by the record. Second, the complete reversion of funds to ACT is unreasonable. Lastly, the parties' attempt to enter an agreement that would release the FLSA claims of all class members without the requisite opt-in procedures is improper.

Pursuant to the terms of the Agreement, the named Plaintiffs would receive a total of $20,000, or 8 percent of the settlement fund. Specifically, Butler would receive $10,000, and Skillin and Barth would each receive $5,000. As the Plaintiffs note, incentive awards are appropriate if compensation would be necessary to induce an individual to become a named plaintiff in the suit. *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 410 (7th Cir. 2000). While incentive awards are not prohibited, they are subject to heightened judicial scrutiny at the preliminary approval stage. *Kaufman*, 264 F.R.D. at 448. In determining whether to approve a proposed incentive award, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, it is undisputed that all three Plaintiffs attended and participated in the settlement conference and the preliminary approval hearing. It also appears that the Plaintiffs met with Plaintiffs' counsel for a number of hours to share their experiences at

ACT.  With respect to Barth and Skillin, we note that they joined this litigation while still employed by ACT.  We also note that under the terms of the Agreement, Butler would release his individual claim for retaliation.  Nonetheless, we find that the awards proposed, particularly that of Butler, are excessive on the record before us.  Even when pressed by the Court for further explanation of the Plaintiffs' involvement, counsel's response lacked sufficient detail with respect to the time and resources expended by the Plaintiffs.

We recognize that courts have approved comparable incentive awards in wage and hour class actions.  But, there is no indication that the Plaintiffs here assisted counsel in reviewing the extensive ACT data or otherwise participated in responding to any discovery requests.  *But see Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *7 (S.D. Cal. 2009) (approving $12,000 incentive award where class representatives provided valuable information critical to counsel's understanding of the case, put counsel in contact with other class members, appeared at depositions, and diligently responded to defendant's numerous discovery requests);  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-88 (W.D.N.Y. 2005) (allowing a $10,523.37 incentive award where named plaintiff was primary source of information concerning the claims against defendant, was often called upon to review documents, and undertook the responsibility of being the only named plaintiff in a case against one of the community's largest employers).  Nor were the Plaintiffs required to sit for lengthy depositions, or any depositions for that matter.  Further, the incentive awards appear unduly disproportionate to the amount the class members could potentially recover under the Agreement.  *See Kaufman*, 264 F.R.D. at 448.  As such, should the parties engage in

continued settlement negotiations, the issue of incentive awards should be re-visited.

Like the Objectors, we also take issue with the reversion of all unclaimed funds to ACT, especially where, in defense counsel's own words, the reversion clause is not a "sticking point." (*See* Tr. Prelim. App. Hr'g at 73.) This issue should also be re-visited in any further settlement negotiations.

Lastly, on the issue of the FLSA claims, we have determined that it would be improper to allow a release of those claims under the Rule 23 opt-out procedure proposed by the parties. As the Seventh Circuit recently reiterated, § 216(b) of the FLSA permits an employee to participate in a collective action only if that employee consents in writing to be a plaintiff in the action. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011); 29 U.S.C. § 216(b). This is in contrast to potential members of a Rule 23 class who must be given only the opportunity to opt out of the class action. *Ervin*, 632 F.3d at 976. Put another way, the FLSA permits collective actions to be maintained on an "opt-in" basis, while Rule 23 permits class actions to be maintained on an "opt-out" basis. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1459486, at *1 (N.D. Ill. June 28, 2004).

In support of their proposed opt-out release of FLSA claims, the parties have cited a few cases approving settlements allowing for such a release. *See, e.g., Harden v. William Wrigley, Jr., Co.*, No. 07 C 5928 (N.D. Ill. Nov. 6, 2008); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005). However, those approvals came with little to no analysis on the issue, and we respectfully decline to follow the same approach. Instead, the plain language of the FLSA leads us to conclude that an opt-in notice is required. 29 U.S.C. § 216(b); *see also Kakani v. Oracle Corp.*, 2007 WL 179377, at *7

(N.D. Cal. June 19, 2007) ("Under no circumstances can counsel collude to take away FLSA rights including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit.").  As Defendants point out, the proposed Agreement between the parties even contemplates this conclusion.  (*See* Agreement ¶ 46.)  The parties have agreed that if their request for settlement of the FLSA claims through the Rule 23 opt-out procedure is denied, the FLSA claims will be subject to an opt-in procedure pursuant to § 216(b).  (*Id.*)  We note that district courts have permitted parties to send both opt-in and opt-out notices in combined FLSA and state law actions.  *See, e.g., Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *7 (N.D. Ill. Dec. 1, 2000); *Kakani v. Oracle Corp.*, 2007 WL 2221073 (N.D. Cal. Aug. 2, 2007); *Wright v. Linkus Enters., Inc.,* 259 F.R.D. 468 (E.D. Cal. 2009); *see also Ervin*, 632 F.3d at 978.  Further settlement negotiations should include a discussion regarding how to properly effectuate the opt-in notice required by this ruling.[3]

For all of these reasons, the parties' request for preliminary approval is denied without prejudice.  Should the parties request the Court's assistance in continued settlement negotiations, they should contact courtroom deputy Rosa Franco to schedule a settlement conference.

### E.    Motion to Strike

Also pending is the Objectors' motion to strike the declaration of Robert Crandall,

---

[3] Recognizing that this Opinion may bring about some changes in the proposed notice, we have not addressed the Objectors' argument that the notice is unintelligible or otherwise improper.  However, we remind the parties of Rule 23's requirement that the notice be clear, concise, and easy to understand. Fed. R. Civ. P. 23(c)(2).

attached as Exhibit 3 to Defendants' reply in support of the Agreed Motion [93-4]. Despite our decision to deny the Agreed Motion, we will briefly address the Objectors' motion so as to avoid further disputes.

### 1. Standard for Admissibility of Expert Testimony

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. That rule states, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact ... a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion...." The Rule further requires that: (1) the testimony be based upon sufficient facts or data; (2) the testimony be the product of reliable principles and methods; and (3) the witness applied the principles and methods reliably to the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92 (1993). In other words, the district court must perform a "gatekeeping" function before admitting expert testimony to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

### 2. Discussion

We agree with the Defendants that the Objectors' arguments regarding Crandall's declaration go primarily to the weight of his testimony, as opposed to its admissibility. Because we need not determine the weight properly afforded Crandall's testimony at this time, we will not spend a great deal of time addressing the Objectors' arguments. Instead, we need only determine whether Crandall's declaration passes muster under the well-settled *Daubert* analysis. We find that it does.

The declaration at issue came in response to attorney Willenson's calculations, which she relied on to illustrate why, in her opinion, the proposed settlement was "terrible." (*See* App. to Objectors' Resp. at Ex. B.) Based on interviews with her clients and her review of Comcast TechNet data for three of those clients (Bonilla, Perez, and Ellis), Willenson determined that "66 hours per week is a reasonable rough estimate of the average weekly hours worked." (*Id.* at ¶ 5.) Using this estimate, Willenson calculated that the claims of the independent contractors are multi-million dollar claims.

Crandall, who was initially retained by Defendants to study the available data and assist counsel in evaluating potential economic exposure, was asked to "address and comment upon Ms. Willenson's characterizations of the available data, the work experiences of the class, and her statements regarding potential economic exposure." (Crandall Decl. at 1.) To accomplish this task, Crandall reviewed the TechNet data and time-punch records for Bonilla, Perez and Ellis, work orders from 186 randomly selected class member work weeks, time-punch data for 994 work weeks from the employee period, debit and credit data from the independent contractor period, and payroll data from the employee period. Crandall used this data to illustrate how Willenson's calculations mischaracterize the experiences of the class members. He also relied on this data to show what he viewed as a more representative picture of the class members' experiences with ACT.

The Objectors do not, and could not, argue that Crandall is unqualified to serve as an expert. Crandall's resume and testimony at the preliminary approval hearing illustrate that he has extensive experience in FLSA and state law wage and hour cases. (*See* Attachment 1 to Crandall Decl.; Tr. of Prelim. App. Hr'g at 79-80.) This extensive

experience allows him to comment on, among other things, the variance in the data and the effect that may have, if any, on class members' claims.

The data Crandall relied on is both sufficient and reliable. We note that the Objectors have not argued that the data is necessarily inaccurate, only that it is incomplete. But, the fact that Crandall did not interview the putative class members or take their testimony into account does not require a finding that his methodology is flawed, especially where the reliability of that testimony has been disputed. (*See* Supp. Joanis Decl. [105-2].)

Nor does Crandall's failure to provide an estimate of total exposure require us to strike his declaration. While the Objectors' critique of Crandall's analysis is duly noted, at a minimum, Crandall's declaration will undoubtedly assist the Court in determining whether a proposed settlement is within the range of possible approval. As such, the Objectors' motion is denied and the Defendants are permitted to rely on Crandall's declarations (both the initial and the supplemental) in further proceedings before the Court. Again, the weight afforded Crandall's testimony and the determination of whether it in fact supports approval of a proposed settlement are for another day.

**VI.    Conclusion**

For the foregoing reasons, the parties' Agreed Motion is denied without prejudice. The Objectors' Motion to Strike is denied. The Objectors are advised that should the parties file a renewed motion for class certification and preliminary approval following further settlement negotiations, the Court will not allow extensive briefing as was allowed on the pending motion. The Objectors' arguments are well documented in

the numerous briefs before this Court and further reiteration of those same arguments would serve only to unnecessarily delay these proceedings.  It is so ordered.

**ENTERED:**

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: July 12, 2011**