**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| QUINN BUTLER, Individually, and on Behalf of All Others Similarly Situated, CHRISTOPHER SKILLIN, Individually and on Behalf of All Others Similarly Situated, JASON BARTH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) | |
| | ) | 09 CV 5336 |
| | ) | |
| Plaintiffs, | ) | **Magistrate Judge Michael T. Mason** |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN CABLE & TELEPHONE, LLC and C. PERRY MOORE, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before the Court is the parties' Amended Motion for Preliminary Approval of Settlement, Certification of Rule 23 Settlement Class, Certification of FLSA Section 216(b) Collective Action Settlement Class and Notice of Proposed Settlement to Class Members [141] ("Renewed Motion"). A group of objectors has also filed a Motion for Leave to File *Instanter* Documents Filed by Defendant American Cable & Telephone in *Perez v. Comcast* [153]. For the reasons set forth below the Renewed Motion is granted and the Motion for Leave to File is denied.

## I.    Introduction

The parties filed their Renewed Motion after this Court denied, without prejudice, the parties' initial motion for preliminary approval and class certification ("Initial Motion").

*See Butler v. Amer. Cable & Tel., LLC,* No. 09 CV 5336, 2011 WL 2708399 (N.D. Ill. July 12, 2011). As set forth in our prior opinion denying the Initial Motion [137], we took issue with (1) the parties' failure to clarify the settlement classes for which they sought certification; (2) the amount of the proposed incentive awards; (3) the reversion of unclaimed funds to the Defendants; and (4) the release of Fair Labor Standards Act ("FLSA") claims of class members who did not affirmatively opt-in. *Id.* The parties have re-visited these issues and again seek, among other things, class certification and preliminary approval. Although we provided a thorough recitation of the facts in our prior opinion, we turn to those facts again in order to resolve the pending motion.

## II.    Background

Plaintiff Quinn Butler initiated this action in June of 2009 when he filed a putative class action complaint against defendants American Cable & Telephone, LLC ("ACT") and its manager C. Perry Moore (collectively, "Defendants"). The complaint was amended on March 4, 2010 and April 28, 2010 to add named plaintiffs Christopher Skillin and Jason Barth (collectively with Butler, "Plaintiffs").

The allegations of the Second Amended Complaint [46] are as follows. ACT is in the business of installing, servicing and disconnecting cable television services throughout Illinois. (Sec. Am. Compl. ¶ 7.) Plaintiff Butler worked for ACT as a cable technician. (*Id.* ¶¶ 1, 8.) Barth worked and continues to work for ACT as a cable technician. (*Id.* ¶¶ 3, 8.) Skillin worked and continues to work for ACT as a cable disconnect technician. (*Id.* ¶¶ 2, 8.)

Plaintiffs allege that prior to January 2009, Defendants improperly classified the cable technicians as independent contractors and paid them on a contingent basis

2

depending on the number of jobs completed each week and without regard to overtime hours worked. (Sec. Am. Compl. ¶ 16.) During this time, Defendants purportedly deducted and withheld 13.8 percent of each technician's wages to pay for the cost of workers' compensation insurance. (*Id.*)

Beginning in or around January 2009, ACT allegedly re-classified Plaintiffs and all similarly situated cable technicians as non-exempt employees under Illinois wage and hour laws and paid the technicians at an hourly rate. (Sec. Am. Compl. ¶ 10.) The hourly rate varied and was contingent on the number of jobs each technician completed on a weekly basis. (*Id.*) According to the allegations of the complaint, Plaintiffs' job duties did not change when they were re-classified as employees and Defendants purportedly maintained supervisory authority over the technicians at all times. (*Id.*)

According to Plaintiffs, Defendants regularly permitted Plaintiffs to work in excess of 40 hours per week without overtime compensation and directed the technicians to record less time than they actually worked. (Sec. Am. Compl. ¶¶ 18, 20.) Defendants purportedly deducted one hour from each day worked for a meal break, even though Defendants were aware that the technicians were not usually relieved from work for one hour meal breaks. (*Id.* ¶ 18.) Defendants also required the technicians to perform a variety of "off-the-clock" tasks, including mapping out directions for their service calls, preparing and cleaning tools and equipment, and completing paperwork. (*Id.* ¶ 21.) Defendants allegedly failed to accurately record the actual hours worked by the technicians. (*Id.* ¶ 22.) Plaintiffs further allege that Defendants did not compensate technicians for "no access" jobs. (*Id.* ¶ 11.) No access jobs occurred when a technician attempted to service a location, but was unable to complete the assignment because,

through no fault of his own, he was unable to access the necessary equipment.  (*Id.*)

Plaintiffs have also alleged that Defendants made a number of improper deductions from their wages and failed to reimburse them for certain employment-related charges.  Specifically, Defendants allegedly deducted monies from the Plaintiffs' wages for "Nextel Charges," "Vehicle Use," "Vehicle Deposit," "IL Install Non Labor Chargeback," "Meter Purchase," and "Uniform Cleaning."  (Sec. Am. Compl. ¶ 12.)  Plaintiffs further allege that Defendants did not reimburse technicians for fuel or toll charges for company vehicles.  (*Id.* ¶ 13.)  Defendants purportedly charged Plaintiffs "tool charges" and did not reimburse them for the cost of tools required to perform their job duties.  (*Id.* ¶ 14.)  Plaintiffs also allege that Defendants deducted charge-back penalties from wages for work that was completed, but not properly documented.  (*Id.* ¶ 15.)

Plaintiffs' eight-count complaint includes class claims, as well as an individual claim brought by Butler.  On behalf of the putative class, Plaintiffs alleged violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*  Plaintiffs also alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201/1, *et seq.* Additionally, Plaintiffs' complaint included common law claims for unjust enrichment, quantum meruit and breach of implied contract.  Plaintiffs sought compensatory damages, including all overtime pay owed plus 2% interest, liquidated damages, and costs and attorneys' fees.

In his individual claim, Butler alleged retaliatory discharge, alleging that ACT improperly terminated his employment after he filed a workers' compensation claim for

injuries sustained on the job. Butler sought compensatory and punitive damages, as well as costs and attorneys' fees.

In response to the complaint, Defendants denied all allegations of wrongdoing, disagreed that this matter could be maintained as a class action, and asserted a number of affirmative defenses. (*See* Defs.' Answers & Affirm. Defenses to Am. Compl. [41, 42].)

The parties proceeded with discovery, which was ordered closed on August 30, 2010 [17]. As we explained in our prior opinion, in February 2010, ACT produced over 21,000 pages of documents, including electronic payroll data, work orders, and job performance related documents. (*See* Tr. of Prelim. App. Hr'g [135] at 21-23; Initial Mot. [125] at 15; Pls.' Reply in Support of Initial Mot. [94] at 10; Defs' Reply in Support of Initial Mot. [93] at Ex. 1 - Decl. of Steven J. Pearlman.) Plaintiffs' counsel purportedly spent "close to a hundred hours" reviewing the documents and also interviewed approximately ten putative class members regarding their experiences at ACT and their possible claims. (Tr. of Prelim. App. Hr'g at 23-24.) Neither party took any depositions.

On April 29, 2010, the parties participated in a settlement conference before this Court. In addition to counsel for both sides, present at that conference were the three named Plaintiffs, Mark Joanis and C. Perry Moore on behalf of ACT, and Defendants' expert Robert Crandall. The parties reached a settlement agreement on that date, the terms of which we explained in detail in our prior opinion. *See Butler*, 2011 WL 2708399 at *4-5.

After the parties' filed their Initial Motion seeking class certification and preliminary approval, plaintiffs in the case of *Perez v. Comcast Corp.*, No. 10 CV 1127

5

(N.D. Ill.) sought leave to appear and file objections to that motion.[1]  The *Perez* plaintiffs (or the "Objectors") also sought to represent a class of cable technicians who were improperly classified as independent contractors and denied benefits such as overtime pay, workers' compensation coverage and guaranteed minimum wage.  The *Perez* plaintiffs allege similar violations of the FLSA.

We allowed extensive briefing on the Initial Motion and held a preliminary approval hearing on April 12, 2011.  At that hearing the Court questioned the attorneys for the parties and the Objectors, and allowed testimony from ACT's president, Mark Joanis, Plaintiff Barth, and Defendants' expert Robert Crandall.

After the Initial Motion was denied, the parties appeared at a status hearing on August 4, 2011 and reported that they intended to file a renewed motion in light of continuing settlement negotiations.  The parties filed that motion on August 15, 2011.  Submitted with the Renewed Motion was a revised settlement agreement (the "Agreement") [141-2] executed on August 12, 2011.  With a thoroughly developed record before us, we turn to the issues presented in the Renewed Motion.[2]

## III.    Class Certification

### A.     Rule 23 Settlement Classes

---

[1]The *Perez* case was filed on February 19, 2010 and remains pending before the Honorable Blanche M. Manning.  Judge Manning stayed the case while the Initial Motion was pending before this Court.  Following our ruling on that motion, Judge Manning lifted the stay and the case is now moving forward.  (We note that the case caption in the *Perez* action was initially *Bonilla v. Comcast.*  Mr. Bonilla has since voluntarily dismissed his claims.)

[2] We addressed some, but not all, of the Objectors' myriad of arguments in our prior opinion, and we address a number of the remaining arguments below.  However, to the extent that we have not addressed an argument set forth by the Objectors, it is because we concluded that it was either undeveloped or unsupported, and thus waived.  See *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (It is well settled that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

The parties now ask the Court to certify, for settlement purposes only, the following classes pursuant to Rule 23:

> Rule 23 Settlement Class 1 - Independent Contractor Sub-Class: All individuals who worked for one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois, and classified as independent contractors, holding the title of cable technician or other positions performing similar responsibilities for the Defendants at any time during the time period of February 28, 2008 through March, 2009.

> Rule 23 Settlement Class 2 - Employee Sub-Class: All individuals who were employed by one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois, and classified as non-exempt employees, holding the title of cable technician or other positions performing similar responsibilities for the Defendants at any time during the class period of January 10, 2009 through April 29, 2010.

(Renewed Mot. at 7.)

We reiterate that Federal Rule of Civil Procedure 23 affords the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)). A plaintiff seeking class certification must satisfy each requirement of Rule 23(a) - numerosity, commonality, typicality and adequacy of representation - and one subsection of Rule 23(b). *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). In addition to those requirements, courts must determine whether the putative class meets two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named

representative be a member of the proposed class.[3] *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977); *Cleary v. Philip Morris USA, Inc.*, 265 F.R.D. 289, 291 (N.D. Ill. 2010).

But, again, despite the court's broad discretion under Rule 23, when determining whether to certify a class for settlement purposes, the court "may not abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.'" *Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Indeed, the requirements of Rule 23 may prove more important for settlement classes where, as the Seventh Circuit put it, "the district court must act almost as a fiduciary of the class...." *Id.* Nonetheless, when "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

### 1. Numerosity

Pursuant to Rule 23(a)(1), a putative class must be so numerous that joinder of all members is impracticable. While a party seeking class certification cannot rely on "mere speculation or conclusory allegations" as to the size of the putative class, *Arreola*, 546 F. 3d at 797, plaintiffs are not required to specify the exact number of class members as long as they have made a good faith estimate. *Arenson v. Whitehall*

---

[3] Unlike in the Initial Motion, the parties have now agreed upon and presented precise class definitions. The parties have also clarified which class each named plaintiff purports to represent and, as explained below, each named plaintiff is a member of those purported classes.

*Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 662 (N.D. Ill. 1996). Although there is no bright line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1). *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010).

The parties have now clarified that according to ACT's records, 100 individuals are in the Independent Contractor class only, 239 individuals are in the Employee class only, and 54 individuals are in both classes. (*See* Renewed Mot. at. Ex. 1 - Crandall Decl [141-1].) Thus, in total, the Independent Contractor class would include 154 individuals and the Employee class would include 293 individuals. Based on these estimates, we easily conclude that joinder of all class members would be impracticable. *See Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307-08 (N.D. Ill. 1995) (classes of fifty and one hundred fifty sufficiently numerous); *Johnson v. Brelje*, 482 F. Supp. 121, 123 (N.D. Ill. 1979) (finding that "plaintiff's allegation that the classes include hundreds of persons...is enough to satisfy [the numerosity] requirement."); *Cullen v. United States*, 372 F. Supp. 441, 447 (N.D. Ill. 1974) ("An attempt to join at least 325 persons in one proceeding no doubt would stretch the facilities and abilities of this Court beyond their elastic limit."). As such, each proposed Rule 23 class satisfies the numerosity requirement.

### 2. Commonality

Next, Plaintiffs must demonstrate commonality, which requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is usually satisfied when there is a "common nucleus of operative fact" arising from the defendant's "standardized conduct towards members of the proposed class." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). "Rule 23(a)(2) does not

demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact...." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011).

Here, with respect to the Independent Contractor class, plaintiffs have alleged that they were improperly classified and not properly compensated for hours worked over forty. With respect to the Employee class, Defendants allegedly continued to engage in the practice of failing to compensate the re-classified cable technicians for overtime hours worked. Plaintiffs have also alleged that Defendants deducted wages for a number of improper charges and encouraged class members to perform off-the-clock work without compensation (*e.g.*, mapping out directions for service calls or preparing and cleaning tools and equipment). Thus, common questions of law and fact among the class members here include whether Defendants improperly classified members of the Independent Contractor class prior to January 2009, whether Defendants failed to compensate class members for all work performed in excess of forty hours per week, and whether Defendants allowed and encouraged class members to perform off-the-clock work without compensation. *See Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011) (finding commonality where defendants had a common practice of underpaying employees for time worked over forty hours per week); *Ross v. RBS Citizens*, No. 09 CV 5695, 2010 WL 3980113, *3 (N.D. Ill. Oct. 8, 2010) ("A policy applicable to a class of employees is enough to establish a common question of fact or law."). Such common questions support the

conclusion that Plaintiffs have satisfied the commonality requirement.[4]

### 3. Typicality

The typicality element requires that the claims or defenses of the representative party be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To determine whether the typicality element is satisfied, courts consider "whether the named representatives' claims have the same essential characteristics as the claims at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir.1993). Typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Here, Plaintiff Barth seeks to represent the Independent Contractor Class and all three named Plaintiffs seek to represent the Employee class. Records reveal that Barth worked for ACT for 10.1 weeks during the time ACT allegedly misclassified the employees as independent contractors. (*See* Crandall Decl.) Barth, Butler and Skillin worked for ACT during the Employee class period for 68.1 weeks, 16.1 weeks and 54.1 weeks, respectively. *Id.* With respect to both classes, the representative Plaintiffs' claims undoubtedly arise out of Defendants' alleged standardized conduct of failing to compensate the Plaintiffs and the class members as required by the wage and hour laws, and making improper deductions. As such, the typicality requirement is satisfied. *See Schmidt,* 268 F.R.D. at 327 (finding typicality where plaintiffs' claims arise out of

---

[4] The Objectors' only argument regarding commonality came recently in their Motion for Leave to File [153], which, for the reasons explained below, the Court has denied. In any event, we disagree that ACT's position in the *Perez* litigation on the issue of FLSA conditional certification precludes a finding of Rule 23 commonality here.

defendant's conduct of failing to compensate class members consistent with the IMWL).[5]

### 4. Adequacy

Pursuant to Rule 23(a)(4), the representative Plaintiffs must be able to "fairly and adequately protect the interests of the class." To determine if the Plaintiffs can do so here we must examine whether they (1) have antagonistic or conflicting claims with other members of the class; (2) have a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have counsel that is competent, qualified, experienced and able to vigorously conduct the litigation. *Schmidt*, 288 F.R.D at 328.

In the Initial Motion, Plaintiffs vehemently argued that all three named Plaintiffs could adequately represent class members that worked as independent contractors and/or employees. The Objectors' disagreed and argued that Butler, who only worked for ACT for one week as a trainee during the Independent Contractor period, could not in fact adequately represent a class of independent contractors. And, because Barth was not added as a Plaintiff until a day prior to the settlement conference, the Objectors argued that the members of the Independent Contractor class were never properly represented and that their claims were not adequately pursued.

Whether Butler would pass muster under Rule 23 as an adequate representative

---

[5] The Objectors' only objection to typicality is that none of the representative Plaintiffs worked for Patriot Communications, which ACT apparently purchased on February 28, 2008. The Objectors assert generally that "it appears likely that *most* proposed contractor class members" would have claims against ACT for Patriot's violations. (Proposed Concl. of Law [133] at 8.) However, the data submitted with the Renewed Motion seems to show that a great deal of independent contractors were not hired until months after ACT's purchase of Patriot. Further, Plaintiffs' counsel explained that while he did not conduct thorough discovery on this issue, he determined that "the value of the claims was not enough to merit the complication that it would add to the case of trying to bring in other previous corporate entities." (Tr. of Prelim. App. Hr'g at 28.) It is undisputed that none of the named Plaintiffs worked for Patriot.

for the Independent Contractor class need not be decided. Plaintiffs have now agreed, for purposes of settlement, not to put Butler forward as the representative of the Independent Contractor class, and have instead agreed to put forth only Barth as the representative of that class. The Objectors continue to argue that this means that the claims of the independent contractors were not adequately pursued prior to Barth's addition as a plaintiff. But, despite this contention, Butler, with the assistance of Plaintiffs' counsel, did in fact pursue the misclassification claims prior to and at the settlement conference. *Culver v. City of Milwaukee,* 277 F.3d 908, (7th Cir. 2002) ("Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions.").

Barth also undoubtedly pursued those claims at the settlement conference, and has continued to advocate on behalf of the Independent Contractor class and the Employee class by way of his participation in the preliminary approval proceedings. Additionally, we have no reason to believe that Butler and Skillin are not adequate representatives of the Employee class. That all three Plaintiffs have claims typical of the classes they seek to represent further demonstrates their interest in the outcome of the case.

Further, and as explained in more detail below, we easily conclude that Plaintiffs' counsel are competent, experienced, and have demonstrated their ability to vigorously conduct the litigation.

### 5.    Predominance and Superiority

Pursuant to Rule 23(b)(3) a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  To make this determination, courts consider (A) "the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

With respect to predominance, we conclude that the plaintiffs' allegations support a finding that common questions predominate over questions affecting only individual members.  Common to both classes here is the central issue of whether Defendants engaged in the uniform practice of failing to pay overtime.  *See Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009)

Here, despite the presence of parallel FLSA claims, we also find that the superiority element is satisfied.  As the Seventh Circuit recently clarified, the existence of such claims does not bar a finding of superiority.  *Ervin* v. *OS Restaurant Services, Inc.* 632 F.3d, 971, 977 (7th Cir. 2011).  The Court also noted that a combined opt-out/opt-in notice, as the parties have proposed here, would not cause too much confusion.  *Id.* at 978 ("It does not seem like too much to require potential participants to make two binary choices: (1) decide whether to opt in and participate in the federal action; (2) decide whether to opt out and not participate in the state-law claims."); *see also Villanueva v. Davis Bancorp*, Inc., No 09 CV 7826, 2011 WL 2745936 (N.D. Ill. July 8, 2011)

Further, individual employees may face an uphill battle if they attempt to recover

14

what may be a relatively small amount of damages on an individual basis, as the cost of litigation would likely outweigh the benefit. See *Curry v. Kraft Foods Global, Inc.*, No. 10 CV 1288, 2011 WL 4036129, *7 (N.D. Ill. Sept. 12, 2011) ("Deciding each claim separately would be an extremely inefficient use of both judicial and party resources, and many individual class members would otherwise be unlikely to bring their claims."). While we note that a handful of individuals have joined the *Perez* litigation, those individuals are free to opt-out and pursue their claims as they see fit.

For all of these reasons, we find that Plaintiffs have satisfied the requirements of Rule 23(a) and 23(b)(3) . Accordingly, the parties' request for certification of the Rule 23 settlement classes set forth above is granted.

### B.    Appointment of Class Counsel

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members. The appointment of class counsel is governed by Rule 23(g), which requires the court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed R. Civ. P. 23(g)(1)(A).    Here, Plaintiffs are represented by Adam J. Betzen of Betzen Law Office, LLC and Ryan F. Stephan of Stephan Zouras, LLP. Contrary to the Objectors' contentions, the attorneys have adequately identified and investigated the potential claims in this action. Further, the law firm profiles of Betzen and Stephan illustrate that both attorneys have extensive experience handling class actions in wage and hour cases such as this one. (See App.

15

to Objectors' Response to Initial Mot. at Ex. C [89-3].)  It rationally follows that the

attorneys have the requisite knowledge of applicable law.  We also have no doubt that

Betzen and Stephan will continue to commit resources to representing the class

members, as their efforts thus far illustrate their commitment to doing so.  As such, the

Court appoints Betzen and Stephan as class counsel.

### C.    FLSA Settlement Classes

In contrast to the Initial Motion, the parties now ask the court to conditionally

certify, for settlement purposes only, the following FLSA § 216(b) collective classes:

> FLSA Settlement Collective Class 1 - Independent Contractor Collective
> Action: All individuals who worked for one or more of the Defendants, its
> subsidiaries or affiliated companies, in the state of Illinois, and classified as
> independent contractors, holding the title of cable technician or other
> positions performing similar responsibilities for the Defendants at any time
> during the time period of February 28, 2008 through March 1, 2009.

> FLSA Settlement Collective Class 2 - Employee Collective Action: All
> individuals who were employed by one or more of the Defendants, its
> subsidiaries or affiliated companies, in the state of Illinois, and classified as
> non-exempt employees, holding the title of cable technician or other positions
> performing similar responsibilities for the Defendants at any time during the
> class period of January 10, 2009 through April 29, 2010.

(Renewed Mot. at 9.)

The parties have agreed, for purposes of this settlement, that there is a *bona fide*

FLSA dispute, and that the FLSA classes should be conditionally certified and notice

sent.[6]

Conditional certification is the first step in the certification process of claims under

---

[6] We note, as did the Objectors, that structuring the settlement in this manner, that is, creating
FLSA settlement classes, was not necessary to effectuate the settlement of the FLSA claims.  However,
we reject the Objectors' general assertions that to structure the settlement this way is too "convoluted and
confusing."

the FLSA, which requires individuals to affirmatively opt in. 29 U.S.C. § 216(b). At this step, the court must determine whether the potential class members are "similarly situated" to the named plaintiffs. *Jirak v. Abbot Labs., Inc.* 566 F. Supp. 2d 845, 847-48 (N.D. Ill. 2008). In doing so, the court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.*

Here, Plaintiffs' allegations that they, along with other cable technicians, were improperly misclassified as independent contractors, and were not properly compensated for overtime or off-the-clock work satisfy the threshold requirement of conditional certification. *See e.g., Rollison v. CC Services, Inc.,* No. 2006 WL 1596824 (N.D. Ill. June 6, 2006) (holding that even without affidavits, the pleadings supported a finding that conditional certification was appropriate).[7]

The Objectors recently filed a motion [153] seeking leave to file documents that ACT filed in opposition to conditional certification in the *Perez* case. Those documents, which are attached to the motion, include defendant ACT's brief in opposition to conditional certification, as well as declarations from various ACT employees filed in support of that brief. According to the Objectors, the doctrine of judicial estoppel prevents ACT from arguing for conditional certification here, while arguing against it in

---

[7] Because courts have held that a final certification determination is required prior to approval of an FLSA settlement, the parties should submit additional evidence on this issue in connection with their request for final approval. *See, e.g., Peterson v. Mortgage Sources, Corp.,* 2011 WL 3793963, *4 (D. Kan. Aug 25, 2011) ("Where parties settle FLSA claims before the Court has made a final collective action ruling, the Court must make some final class certification finding before it can approve a collective action settlement."). The court may also seek additional testimony on this issue at the final approval hearing.

*Perez.*[8]

At a hearing on the Objectors' motion, Defendants correctly argued that judicial estoppel does not apply here where (1) there is no indication of fraud on the court; and (2) ACT is contesting a litigation class in *Perez*, as opposed to the settlement class it is agreeing to here. *See Butler v. Village Of Round Lake Police Dept.*, No. 06 CV 3366, 2008 WL 4543014, *3 (N.D. Ill. Oct. 8, 2008) (noting that "the purpose of the doctrine is to reduce fraud in the legal process"); *McDaniel v. Qwest Comm's Corp.*, No. 05 CV 1008, 2006 WL 1476110, *6 (N.D. Ill. May 23, 2006) (defendants who previously agreed to a settlement class were not barred from subsequently contesting a litigation class). For these reasons, the Objectors' Motion for Leave to File is denied.

## IV.  Preliminary Approval

Having resolved the certification issues, we turn to the issue of preliminary approval, which, as we previously explained, is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion. Fed. R. Civ. P 23(e); *see also Butler*, 2011 WL 2708399 at *7-8 (citing *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002) and *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998)). In determining whether to preliminarily approve a settlement, courts should consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the

---

[8] The Objectors also raise allegations of misconduct by ACT's counsel in the *Perez* cas*e*. As the Objectors have not sought any relief as a result of that conduct, we see no reason to address those allegations.

likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). An additional factor to consider is whether the named representatives are improperly granted preferential treatment. *See Kaufman v. Amer. Express*, 264 F.R.D. 438, 447-48 (N.D. Ill. 2009). However, at the preliminary approval stage, "the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *American Intern. Group, Inc. v. ACE INA Holdings, Inc.*, 07 CV 2898, 09 CV 2026, 2011 WL 3290302, *6 (N.D. Ill. Jul 26, 2011) (quoting *Armstrong*, 616 F.2d at 314).[9]

The terms of the proposed settlement agreement here are as follows. Defendants will create a $250,000 fund to settle all of the claims of the named Plaintiffs and the class and collective action members (the "Common Fund"). (Agreement ¶ 6.) In addition to the payments to class members, the following payments will be taken from the Common Fund: (1) $8,000 in enhancement payments to the named Plaintiffs

---

[9] A court's review of FLSA settlements requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. See *Pessoa v. Countrywide Home Loans, Inc.*, 06 CV 1419, 2007 WL 101757, *2 (M.D. Fla. Apr. 2, 2007) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)). In doing so, courts often consider: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) (quoting *Misiewicz v. D'Onofrio Gen. Contractors*, No. 08 CV 4377, 2010 WL 2545439, *4 (E.D.N.Y. May 17, 2010)).

($3,000 to Butler, $2,500 to Barth and Skillin); (2) administrative fees to the settlement administrator; and (3) attorneys' fees and costs to Class Counsel (not to exceed 30% of the Common Fund).  (*Id.* ¶¶ 63-65.)

The Common Fund will be allocated equally among the Rule 23 settlement classes and the FLSA settlement classes ($62,500 to each).  (*Id.* ¶ 67.)  Claims will be distributed on a claims-made basis with any unclaimed funds to be redistributed to the participating class members.  (*Id.*)  While the calculation of claims involves a two-step process (set forth in detail in paragraph 67 of the Agreement), only one distribution to each class member will be made.  (*Id.*)  The parties agree that 100% of the amount distributed to each claimant will be considered damages for lost wages and will be reported as such on IRS Form W-2.  (*Id.* ¶ 71.)

Pursuant to the Agreement, "all members of the Settlement Classes, including those who do not opt-out of the settlement and those who consent to opt-in and resolve their FLSA claims" will release and fully discharge Defendants and all past, present and future direct and indirect parents, affiliates, subsidiaries, etc. from any and all claims, debts, liabilities, causes of action, etc. whether known or unknown that were alleged or reasonably could have arisen out of the same facts alleged in this litigation.  (*Id.* ¶ 91.)

Applying the factors listed above to this case, we conclude that the proposed settlement is within the range of possible approval.  As an initial matter, we already determined, over the objections of the *Perez* plaintiffs, that the initial settlement agreement was not a product of collusion.  *See Butler*, 2011 WL 2708399, at *8.  The parties represent that after the Initial Motion was denied, they continued to engage in arm's length negotiations, the result of which is the proposed Agreement.  (Renewed

Mot. at 24.)  We see no reason to doubt this representation, nor do we see any signs of collusion on the record before us that would prevent preliminary approval.  We also note that the opinion of competent counsel, on which the Court is entitled to rely heavily, weighs in favor of preliminary approval.  *Armstrong*, 616 F.2d at 325.  Here, counsel continue to represent that the settlement is fair to their respective clients in light of the claims, law and anticipated evidence.  (Renewed Mot. at 25.)

We turn to what courts view as the most important factor - "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).  When conducting this analysis, courts should begin by "quantify[ing] the net expected value of continued litigation to the class."  *Id.* (quoting *Reynolds*, 288 F.3d at 284-85.)  To do so, the court should estimate the range of possible outcomes and ascribe a probability to each point on the range.  *Id.*  While a high degree of precision cannot be expected, the court must insist that the parties present evidence "that would enable possible outcomes to be estimated, so that the court can at least come up with a ballpark valuation."  *Id.*

Here, as the Objectors point out, the parties have not provided much in the way of concrete evidence to assist the Court in coming up with a ballpark valuation of Plaintiffs' claims.  However, the record is not entirely void of such evidence.  First, we certainly tend to agree that liability in this case is "a closely contested issue" given the claims involved and disputes involved.  (*See* Renewed Mot. at 11-12.)  As for actual damages at issue, the Objectors' have argued that the proposed settlement is inadequate because, based on Objectors' counsel's calculations, the misclassification

claims alone are "multi-million" dollar claims. (*See* Willenson Aff. [89-2].) But, as Defendants' expert has explained, through his declarations and testimony, those calculations are flawed for a number of reasons. (*See* Crandal Decl [93-2] and Suppl. Decl. [105-1].) Not only did Ms. Willenson fail to account for the risks Plaintiffs would face if this case were to move forward (*i.e.,* failing on class certification stage or on the merits), but the data and information she used came from individuals who undoubtedly have stronger claims than the average class member.

Defendant Crandall's analysis of class-wide data also leads us to believe that Ms. Willenson has severely exaggerated the overtime hours actually worked and the allegedly improper expense deductions. In fact, Crandall's analysis of work orders revealed that class members often worked fewer than five days a week and averaged between 24.6 and 32.0 hours of "in-service" time per week. The time punch data revealed an average of 34.18 hours per week, which included breaks. The time punch data also revealed that when employees worked over time, they averaged approximately nine hours of overtime per week. These numbers pale in comparison to the Objectors' estimate that the technicians worked 26 overtime hours per week. Thus, even assuming that the data does not reflect all of the overtime hours actually worked, at the very least, Crandall's calculations call into question the Objectors' estimates and support a finding that the amount agreed upon here is within the range of possible approval.

On the record before us, and having had the benefit of participating in the settlement conference, the Court finds that the $250,000 settlement is within the range of possible approval. Whether the settlement is in fact fair, adequate and reasonable, is

for another day.  *See Kaufman*, 264 F.R.D. at 448 (indicating that the proper valuation

of the plaintiffs' claims would be the subject of any fairness hearing to be held later).

Further, while we recognize Plaintiffs' contention that calculation of damages may be

amorphous, this does not excuse the Plaintiffs' from submitting evidence that would

enable the Court to fully assess the potential value of Plaintiffs' claims.  The Court

cautions the parties that failure to submit such evidence would preclude final approval.

The complexity, length and expense of continued litigation also tips the scale in

favor of preliminary approval.  First, Defendants have repeatedly reserved their right to

contest class certification if the Court does not approve the settlement.  Additionally, if

discovery moved forward, the parties would incur a great deal of costs conducting,

among other things, depositions and expert discovery.  Summary judgment would

undoubtedly be sought and, if denied, a lengthy and complex trial would result.  An

appeal would follow.  The parties have estimated that, if this case were to move

forward, a final decision would be delayed another three or more years on top of the

three years it has been pending thus far.  (Renewed Mot. at 23.)

As for the amount of discovery conducted, we have already explained that we

disagree with the Objectors that it was inadequate.  *See Butler*, 2011 WL 2708399, at

*8.  Again, Plaintiffs' counsel conducted interviews with a number of putative class

members and Defendants produced a great deal of documents, including electronic

payroll data, work orders and job performance related documents.  Plaintiffs' counsel

spent close to a hundred hours reviewing and assessing those documents.

Additionally, the mere fact that Plaintiffs' counsel did not secure the TechNet data to

further substantiate any possible claims against defendant is not dispositive on this

issue, especially where the reliability and strength of that data has been called into question. (*See, e.g.,* Def.'s Reply in Support of Initial Mot. at 13.) Given the amount of discovery performed, albeit somewhat informal and far from contentious, we are confident that the Court and counsel are able to evaluate the merits of the Plaintiffs' claims. *Armstrong*, 616 F. 2d at 325.

At this juncture, all opposition to the proposed settlement has come from the *Perez* plaintiffs, who have voiced their objections loudly and clearly in this case and in the *Perez* case. In any event, this factor is better left for the final approval stage because, to assess it fully now, before notice has been sent, would be premature. *See In Re AT&T*, 270 F.R.D. at 349.

The parties have also re-visited the issue of incentive payments and have agreed to the amounts set forth above ($3,000 for Butler, $2,500 for Barth and Skillin). These amounts are consistent with incentive awards approved in other wage and hour cases, as well as with the named Plaintiffs' contributions to the class and this litigation. *See e.g., Chemi v. Champion Mortg.*, No. 05 CV 238, 2009 WL 1470429, *14 (D.N.J. May 26, 2009) (awarding $5,000 and $3,000 to named plaintiffs who provided information and documents during discovery); *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (awarding $5,000 to named plaintiffs who helped review documents and participated in mediation). As we previously explained, Butler has been involved in this litigation from the outset and has agreed to release his individual claim for retaliation. All three Plaintiffs have provided pertinent information to Plaintiffs' counsel, and participated in the settlement conference and the preliminary approval hearing before this Court. Barth and Skillin took the additional risk of getting involved in

24

this litigation against ACT, who at the time was their employer.

We also note that the parties have removed the provision that would allow the unclaimed funds to revert back to the Defendants. Instead, the unclaimed funds will be redistributed to the participating class members, increasing their recovery. This too weighs in favor of a finding that the settlement is within the range of possible approval.

Finally, we disagree with the Objectors' assertions that the parties' Agreement would still extinguish the FLSA claims of even those workers who do not affirmatively opt-in. As the parties explained, and as our reading of the Agreement reveals, only those individuals who affirmatively opt-in will release their FLSA claims. This is consistent with the language of the FLSA and our prior opinion, in which we held that the parties could not agree to release the claims of absent class members who do not opt in. *See Butler,* 2011 WL 2708399, at *10 (citing *Ervin* 632 F.3d at 976); *see also* 29 U.S.C. § 216(b). We suggested an opt-out/opt-in notice procedure, as has been used in other cases, which the parties have now proposed. *See, e.g.*, *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 CV 5755, 2000 WL 1774091, *7 (N.D. Ill. Dec. 1, 2000); *Kakani v. Oracle Corp.*, 2007 WL 2221073 (N.D. Cal. Aug. 2, 2007); *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009). Similarly, our reading of the covenant not to sue in paragraph 95 is that the provision would not bar FLSA claims of those who did not opt-in.

We also disagree that paragraph 92 is improper. As the parties explain, that paragraph, which was included in the initial agreement, simply sets forth the well settled principal that double recovery is not permitted. *See Collins v. Kibort*, 143 F.3d 331, 339-40 (7th Cir.1998) ("[T]he law abhors duplicative recoveries.") Of course, specific

disputes regarding an individual's double recovery are not currently before the Court and need not be resolved.

For all of these reasons, we conclude that the Agreement is within the range of possible approval. But, the parties are again advised that prior to final approval the parties must submit additional information that would allow the Court to fully and adequately assess whether the Agreement is fair, adequate and reasonable.

## V.     Notice and Procedures for Notice

The parties also ask the Court to approve the Notice of Proposed Settlement ("Notice") and the Claim Form, which are attached as Exhibits 3 and 4 to the Renewed Motion, as well as the proposed notice procedures. Where, as here, no prior notice of a Rule 23(b)(3) class action has been given, "the rights of absent class members to exclude themselves from the action under Rule 23(c)(2) are preserved by combining the notice of settlement hearing with notice of opportunity for exclusion from the action." *In Re AT&T*, 270 F.R.D. at 350-51 (citing Newberg on Class Action § 11:30 (4th ed. 2010)). Rule 23(c)(2)(B) requires that, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances." The notice must clearly and concisely state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

As for notice of a proposed settlement, Rule 23(e) requires that notice be directed in a reasonable manner to all class members who would be bound by the proposal. This requirement is satisfied if the notice informs the class members of "the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the final approval hearing." *In Re AT&T*, 270 F.R.D. at 351.

Our review of the Notice proposed here reveals that it complies with the requirements of Rules 23(c)(2) and 23(e)(1). While long, we disagree that it is incomprehensible simply because it includes multiple subclasses. And as we have already discussed, the Seventh Circuit has concluded that an opt-out/opt-in notice is permissible. *Ervin*, 632 F.3d at 978. Further, the Objectors' contention that the Notice must include information regarding the *Perez* action comes with no citation to supporting case law.

As for the Objectors' contention that a separate opt-out form should be included, we find that to do so here, where class members are already faced with multiple decisions, would lead to confusion and may encourage members to unwittingly opt-out of the class. *See Patrowicz v. Transamerica HomeFirst, Inc.,* 359 F. Supp. 2d 140, 152-53 (D. Conn. 2005). We note that the Notice explicitly explains that class members can opt-out of the settlement by so indicating on the claim form, or by sending a written statement to the Settlement Administrator. *See id.* at 153 ("All that the Due Process Clause required is that absent Class members be informed of their right to opt out of the class and the procedures for doing so."); *see also*, *Canel v. Lincoln Nat. Bank,* 175 F.R.D. 517, (N.D. Ill 1997). Therefore, the parties need not include a separate opt-out

form.

As for the method of notice, we conclude that first-class mail to each individual class member's last-known address is the most efficient and effective way of directing notice to the class members. *Kitson v. Bank of Edwardsville*, 2009 WL 3066620, *4 (N.D. Ill. Sept. 18, 2009) (finding that distribution by first-class mail to each identified class member at last known address was reasonable, fair, adequate and comports with due process). Before doing so, however, counsel is directed to thoroughly proofread the Notice and Claim Form as they contain a number of typographical errors. The dates and deadlines set forth below should also be inserted where necessary.

## VI.  Attorneys' Fees

As mentioned above, the parties have agreed that Class Counsel will not seek more than 30% of the Common Fund. (Agreement ¶ 63.) Interestingly, the Objectors' now argue that Plaintiffs' counsel must file a Rule 54(d)(2) motion for attorneys' fees prior to preliminary approval in order to comply with Rule 23(h). (*See* Objections to the Parties' Renewed Mot. at 3.) That rule requires that notice of a Rule 54(d)(2) fee motion be "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

Naturally, as Plaintiffs' counsel has noted, a motion for fees would be premature at this time. Further, the Notice informs class members that Class Counsel may recover up to 30% of the Common Fund in the way of fees and costs. (Notice at 6.) It further informs class members that the Court will be asked to approve Class Counsel's application for attorneys' fees at the final approval hearing and that the application will be on file with the Court shortly after the Court preliminarily approves the Agreement. (*Id.* at 10.) Such notice has been found to be compliant with Rule 23. *See e.g., In re*

*Bisys Secs. Litig.*, No. 04 CV 3840, 2007 WL 2049726, *1 (S.D.N.Y. July 16, 2007) (finding the notice requirement of Rule 23 satisfied where "members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund"); *see also In re AT & T Mobility Wireless Data Services Sales Tax Litigation*, --- F.Supp.2d ----, 2011 WL 2204584, *34-35. (N.D. Ill. June 2, 2011). Likewise, we find it sufficient here.

## VII. Conclusion

For the foregoing reasons, the Court grants the parties' Renewed Motion as follows. The Rule 23 settlement classes set forth above are certified and Plaintiffs Barth, Butler and Skillin are appointed representatives of the classes specified above. Adam J. Betzen of Betzen Law Office, LLC and Ryan F. Stephan of Stephan Zouras, LLP are appointed class counsel. The FLSA settlement classes set forth above are conditionally certified.

The Agreement is preliminarily approved, the Court finding that it is within the range of possible approval. The proposed Notice and Claim forms are approved so long as the parties properly proofread those forms. Rust Consulting Inc. is appointed settlement administrator. Notice should be sent in the manner set forth in the Agreement by October 21, 2011. All claim forms, consents to opt-in, and requests to opt-out must be received by December 6, 2011.

A final fairness hearing is set for Thursday, January 19, 2012 at 10:00 a.m. in courtroom 2266. Class counsel shall file their application for fees by December 15, 2011. The written declaration of the settlement administrator indicating whether the Notice has been properly disseminated shall also be filed by December 15, 2011.

All written objections and notices of appearance must be filed with the court and properly mailed to the settlement administrator and counsel of record by January 4, 2012. All papers in support of final approval must be filed by January 13, 2012.

**ENTERED:**

MICHAEL T. MASON
United States Magistrate Judge

**Dated: October 6, 2011**